Jonas JACKSON, Appellant,

v.

GENERAL ELECTRIC COMPANY,
Appellee.

No. 1778.

Supreme Court of Alaska.

Oct. 12, 1973.

---

5. *Id.*, at 181, 69 S.Ct. 1302.

Joe P. Josephson, Anchorage, for appellant.

Robert C. Lowe, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee.

1. Hereinafter referred to as GE.

2. Hereinafter referred to as GECC.

3. It is possible that Jackson thought that the Alaska courts did not have jurisdiction over GECC since GECC was not then licensed by the State of Alaska to do business within the state.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

This appeal brings a single issue before us for determination. Under the facts here, is the parent corporation, General Electric Company,[1] to be held liable for the wrong of its wholly-owned subsidiary, General Electric Credit Corporation?[2] The essential facts giving rise to this case are not in dispute.

Appellant Jonas Jackson, a member of the armed forces, bought a General Electric appliance in 1962 from a retail store in Texas. The retailer made a credit arrangement with appellant to finance the purchase through General Electric Credit Corporation. Two years after the sale of the appliance GECC sent a defamatory collection letter to appellant's military superiors. Although GECC made the defamation, appellant brought his action against the appellee GE. According to the record GE was licensed to do business in the State of Alaska when the action was filed but GECC did not obtain a license to do business in Alaska until after that date.[3] The appellant before the case came to trial moved to add GECC as a party defendant. This motion was successfully resisted by appellee.[4]

During trial, the judge held a hearing, out of the presence of the jury, on the question of appellee's responsibility for GECC's defamatory conduct. The judge reserved that issue to himself and submitted the case to the jury only on those issues relating to defamation and damages. A verdict of $5,000.00 in appellant's favor was returned by the jury. The judge then ruled on the reserved issue and dismissed appellant's claim against GE.

4. Appellant did not petition for review under Rules 23 and 24 of the appellate rules from the ruling by the trial court which denied his application to make GECC a defendant nor has he made this ruling one of his specifications of error in this appeal.

The trial judge stated in a memorandum opinion the reasons for dismissal. The findings of the trial court are summarized as follows:[5]

■ GECC carries on two principal lines of business consisting of consumer financing and commercial and industrial financing. For the nine months ending September 26, 1970, 51% of GECC's receivables represented consumer financing (30% in home products of the character involved in the instant case).

■ GECC provides inventory financing for over 6,500 dealers of home products, most of whom sell a variety of home products purchased from various manufacturers. The great majority of such financing is for home products manufactured by GE.

■ In addition to its consumer credit involvement GECC maintains a very substantial operation in commercial and industrial financing, financing sales of heavy equipment, aircraft and other equipment, and leasing of aircraft and railroad rolling stock and industrial equipment. Receivables in this connection exceeded three-quarters of a million dollars on September 26, 1970. There is no evidence showing that any substantial amount of these receivables involve GE products.

■ As of September 26, 1970, approximately 7% of GECC's consumer time sales and other retail receivables outstanding were attributable to GE products and approximately 56% of its dealer inventory financing was related to GE products. In addition, management estimates that approximately 2% of its commercial and industrial receivables as of September 26, 1970 were attributable to the financing of GE equipment exclusive of GE components incorporated in equipment of other manufacturers.

■ There is recited [in the prospectus] an agreement, entered into in 1960 between GE and GECC concerning the repurchase of GE appliances and television sets repossessed by GECC from defaulting dealers, with $80,000,000 in receivables covered by the agreement, in addition to additional recourse rights against GE on certain other GE products of $23,000,000.

■ Consolidated income tax returns are filed by the two companies.

■ GE furnishes advisory services to GECC "including consulting services of specialists in treasury, accounting, tax, legal, marketing, employee and community relations, and auditing functions." GECC pays GE for these services, with slightly over $1,000,000 authorized in 1970. The directors and officers of GECC in 1970 were all officers or employees of GE except the president, Mr. Klock. Mr. Klock, however, is shown to have received incentive compensation of 474 shares of GE in addition to his salary. The prospectus reveals the option rights of key employees to purchase GE stock.

■ The earnings of the subsidiary are reflected in financial reports of the parent in determining the parent's income.[6]

■ GECC is not underfinanced, its creditors are not disadvantaged, and the corporation is unquestionably solvent.

On these findings the trial court concluded that GE should not be held responsible for GECC's defamatory letter.

■■ There are a number of well-recognized exceptions to the rule that ordinarily the parent corporation will not be held liable for the wrongs of its wholly-owned subsidiary. For instance a parent corporation may be held liable for its subsidiary's conduct when the parent uses a separate corporate form to defeat public conven-

5. Many of the findings of the trial court were derived from a GECC prospectus dated December 10, 1970, filed with the Securities Exchange Commission. The prospectus which was offered by appellant was received into evidence as an exhibit. The trial court found the contents of the prospectus highly reliable.

6. Testimony of Mr. Richard Sassara, vice president and branch manager for Foster and Marshall Investment Bankers and Brokers.

ience, justify wrong, commit fraud, or defend crime.[7] The parent corporation may also be liable for the wrongful conduct of its subsidiary when the subsidiary is the mere instrumentality of the parent. Liability is imposed in such instances simply because the two corporations are so closely intertwined that they do not merit treatment as separate entities.[8]

Appellant did not attempt at trial to prove that the use of separate corporate forms by GE was to perpetrate fraud or inequities, although most of the authorities he cites to us in his brief involved such matters. Rather, he attempted to establish that the affairs of GE and its subsidiary, GECC, were so interdependent that the corporate status of GECC should be disregarded; to put it another way, that GECC was a mere instrumentality of GE when the defamatory letter was sent.

Professor Powell[9] has identified eleven factors which may be looked for in ascertaining whether a subsidiary is acting as the mere instrumentality of its parent:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

It is not necessary, of course, that all eleven of these factors be found in order to conclude that the subsidiary is the mere instrumentality of its parent. A parent corporation which does not permit its subsidiary to exercise an individual status may not expect that the subsidiary's independence will be recognized elsewhere.

It is true that the findings of the trial court disclose a good deal of interrelation in the financial affairs and management of GE with its subsidiary GECC. The principal business carried on by GECC is to provide financing. But a substantial amount

7. *See* Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 160 (7th Cir. 1963).

8. To be distinguished from "mere instrumentality" situations are those cases where the subsidiary is an *agent* of the parent for some purposes. Such cases are not true "veil-piercing" cases at all; rather, recovery is had against the parent on traditional agency principles. *See e. g.*, Zaist v. Olson, 154 Conn. 563, 573–574, 227 A.2d 552, 557 (1967); Detroit Motor Appliance Co. v. General Mo-

tors Corp., 5 F.Supp. 27, 30–31 (E.D.Ill. 1933).

9. Powell, Parent and Subsidiary Corporations § 5–6, at 9 (1931). This listing has been quoted approvingly by the courts. *See* Taylor v. Standard Gas & Electric Co., 96 F.2d 693, 704 (10th Cir. 1938); Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 161 (7th Cir. 1963). *See also* Annotation, 7 A.L.R.3d 1343 (1966).

of GECC consumer financing in 1970 involved home products of manufacturers other than GE. Most commercial and industrial financing done by GECC in the same year did not involve GE products.

It is significant that the 1960 agreements between GE and GECC for purchase of repossessed GE appliances and the agreement by which GECC obtains management consultant services from GE appear to establish rights and obligations as between separate corporate entities. Appellant offered no evidence to show that GECC was underfinanced, or that GE used the property of GECC as its own, or paid the salaries, losses or expenses of GECC.

Our responsibility is not to approve the result, and indeed in this case an opposite result could conceivably have been reached by us if we were serving as the trial court. We cannot say however that the findings of the trial judge were clearly erroneous.

 We hold, therefore, that the trial court did not err in holding that appellant has failed to prove that GECC is the mere instrumentality of GE and hence responsible to appellant for the defamatory letter.

The judgment is affirmed.