**ROVIN SALES COMPANY, Cleveland, Ohio, Plaintiff,**

v.

**The SOCIALIST REPUBLIC OF ROMANIA, a Foreign State, et al., Defendants.**

**No. 73 C 1550.**

United States District Court, N. D. Illinois, E. D.

Sept. 15, 1975.

Kaplan & Kaplan, Chicago, Ill., John R. Vintilla, Cleveland, Ohio, for plaintiff.

Nicolae Tanase, Brown, Fox & Blumberg, Jacob L. Fox, Eugene L. Resnick, Chicago, Ill., Charles R. Hancock and Otto L. Yelton, Jr., Dickinson, Tex., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

By an amended complaint that is anything but the short and plain statement contemplated by Fed.R.Civ.P. 8(a), plaintiff, Rovin Sales Company, an Ohio corporation, sues defendants, The Socialist Republic of Romania, a foreign state; its Ministry of Foreign Trade; Vinexport, an enterprise owned by Romania and created for the purpose of selling and exporting Romanian wines; Vasile Lapadatu, the Director General of Vinexport; Corneliu Bogdan, Romania's Ambassador to the United States; Napoleon Fodor, Romania's Chief Commercial Counselor in the United States; Octavian Ichim, the representative of Romania's Ministry of Agriculture in the United States, and Teodor Munteanu, the Economic Counsel of the Romanian Trade Promotion Office in Chicago, Illinois, for damages arising out of defendants' alleged failure to honor and their conspiracy to destroy plaintiff's alleged exclusive distributorship of Romanian wines in the United States. While the complaint has been drawn by counsel, it is akin. to the *pro se* pleading considered in *Dioguardi v. Durning*, 139 F.2d 774 (2d Cir. 1944) and presumably is entitled to the same generous construction. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nevertheless, we look askance at its hyperbole and obviously *in terrorem* prayer for $75,000,000 in dam-

ages and we remind counsel of their responsibilities under Rule 11, Fed.R.Civ.P., and the cost consequences contemplated by 28 U.S.C. § 1331(a) (1970).

All that is presently pending is the motion of all defendants, except Munteanu, to quash service of summons and dismiss the action "on the grounds that this court lacks jurisdiction over the persons of these defendants and the subject matter of the amended complaint." Defendants' Motion to Quash Service or Dismiss. We assume that Munteanu was advisedly omitted from the motion because he is present in the Northern District of Illinois. But advised or inadvertent, his failure to move to dismiss is of no consequence because of the conclusions we reach as to the threshold jurisdictional questions as to all defendants.

As noted, this is an amended complaint. The original complaint was against Vinexport alone and service was purportedly made on Munteanu as the agent of Vinexport present in this district. A challenge to that service was earlier sustained on the basis of Munteanu's uncontroverted affidavit that he had no connection with Vinexport. Tr. Pro. 12/11/74, p. 10. Plaintiff was granted the opportunity to plead over for the purpose of alleging facts sufficient to warrant the exercise of so-called long arm jurisdiction under Rule 4(e), Fed.R.Civ.P., and Sections 16 and 17 of the Illinois Civil Practice Act, Ill.Rev. Stat., 1973, ch. 110, §§ 16, 17.

The sufficiency of the amended complaint is not before us. All that has been raised to date is subject matter and *in personam* jurisdiction. But because the jurisdictional reach of Section 17 of the Illinois Civil Practice Act is directed to "cause[s] of action" arising in material part out of the performance of certain enumerated types of conduct in Illinois, some appraisal of the contents of the amended complaint is required. However, the pleading requirements of Section 31 of the Illinois Civil Practice Act—that the pleader allege "substantial averments of fact necessary to state any cause of action either at law or in equity," Ill.Rev.Stat.1973, ch. 110, § 31—are not applicable here merely because Rule 4(e) embraces the methods and circumstances under which extraterritorial service of process may be effected in Illinois. A federal court must apply federal standards of pleading under Rule 8(a). Therefore, our inquiry here is not whether plaintiff has pleaded a cause of action which has arisen in part from conduct performed by the defendants in Illinois, but whether, under the amended complaint, plaintiff would be permitted to "prove [a] set of facts in support of [its] claim which would entitle [it] to relief," (*Conley v. Gibson, supra*, at 45–46, 78 S.Ct. at 102) and whether that set of facts can be said to involve, in material part, the performance of acts by the defendants in Illinois.

Applying this standard to Count I of the amended complaint, under its fair intendments plaintiff would be permitted to prove that the manufacture, sale and export of wine in Romania is a state enterprise conducted exclusively through agencies of the State of Romania. In 1968 plaintiff was organized for the purpose of marketing Romanian wines in the United States. Sometime during the period 1968 through late 1972 plaintiff was appointed the exclusive agent for the importation and sale of Romanian wines in the United States by the defendant State of Romania, acting through various agents including Fructexport and Romagricola, which were the predecessors of defendant, Vinexport. Vinexport was organized by the State of Romania in November 1972 as a state owned enterprise for the purpose of exporting and selling Romanian wines to and in the United States.

During the period 1968–1972 plaintiff successfully promoted Romanian wines in the United States creating markets where none had theretofore existed. In 1972 it sold 3000 cases of wine, worth $22,000, in Chicago, Illinois and its environs. It incurred promotional and label-

ing expenses in the amount of $11,000 at defendants' request. Throughout this period it was promised by agents of the State of Romania that it would not be replaced as the exclusive agent for Romanian wines in the United States, that no other person would be permitted to import Romanian wine into the United States and that the parties would join their interests in a "mixed company . . . having as its purpose . . . a single legal entity which would engage exclusively in the sale of the wines and alcoholic beverages of Romania in the United States, and that plaintiff's exclusive right in this respect [would] be vested . . . in the mixed company." Amended Complaint, ¶ 13.

In late 1972 or early 1973 defendant State of Romania, through its several defendant agents and contrary to plaintiff's exclusive distributorship, purportedly granted the exclusive right to sell all Romanian beverages in the United States to Beverage Importation Corporation of League City, Texas.

Plaintiff avers that the Romanian state's decision to terminate plaintiff as the exclusive agent for Romanian wines in the United States was the result of a conspiracy among defendants Bogdan, Lapadatu, Fodor and Munteanu, the object of which was to "eliminate" plaintiff and pursuant to which the conspirators "maliciously persuaded the appropriate authorities in Romania to grant the exclusive right [to sell] . . . to Beverage Importation Corporation. . . ." Amended Complaint, ¶ 22.

As for acts performed by the defendants in Illinois, plaintiff asserts in an uncontroverted affidavit by John R. Vintilla,[1] that in June 1971 defendant Bogdan organized and arranged a trade seminar in Chicago at which Bogdan was the principal speaker. At defendant's request, Vintilla attended and participated in the seminar as plaintiff's representative and plaintiff provided the wines that were served to the participants.

The Vintilla affidavit proceeds to state that in February 1972 defendant Lapadatu met with defendant Munteanu in Chicago and informed Munteanu of the recently established arrangements with Beverage Importation Corporation and that "plaintiff could no longer sell [Romanian] wines in Chicago and the midwest. . . ." Vintilla Affidavit, ¶ 13.

The merits of plaintiff's claim on the totality of the facts to be adduced are not before us. Thus, defendants' oblique assertion in their papers to an absence of consideration supporting plaintiff's alleged exclusive distributorship, defendants' assertion that the agreement is unenforceable in Illinois because plaintiff is not authorized to import or sell liquor in Illinois, and our own observation that portions of Count I sound in terms of an anticipated agency which never materialized, are not now germane. Those matters go to the merits of plaintiff's claim under Count I to which defendants have not yet responded because, as they assert, they cannot be compelled to.

Count II is much simpler and better pleaded. It alleges a contract under which defendant Vinexport agreed to deliver 900 cases of wine to plaintiff and 500 cases to plaintiff's customer, Arizona Distributing Company of Phoenix, Arizona. Presumably the deliveries were to be made to plaintiff either at its home office in Cleveland, Ohio or in Arizona, and to plaintiff's customer in Arizona. The count also alleges the expenditure of funds by plaintiff to promote the Arizona market. Plaintiff was damaged when Vinexport failed to perform.

---

1. Mr. Vintilla appears here as counsel for plaintiff. We infer from various papers on file that he is one of the principals in plaintiff. We remind him that he cannot persist in his role as counsel and testify to any controverted matters should the case be tried. American Bar Association's Code of Professional Responsibility, Disciplinary Rules 5-101(B), 5-102; Ethical Considerations 5-9, 5-10.

Subject matter jurisdiction is no problem. The controversy is between a citizen of Ohio and a foreign state and agencies and citizens thereof and the amount in controversy exceeds $10,000 exclusive of interest and costs. 28 U.S. C. § 1332(a)(2).

Nor are the defendants, the Socialist Republic of Romania, and its several agents and agencies, immune from suit in a court of the United States. On the motion to quash the original service of process on Munteanu, as agent of Vinexport, we held in an unreported oral opinion that where a foreign sovereign engages in commercial as opposed to political or governmental activities, it is not immune from suit on its contracts. *Victory Transports Inc. v. Comisaria General, etc.,* 336 F.2d 354 (2d Cir. 1964). *See Purdy Co. v. Argentina,* 333 F.2d 95 (7th Cir. 1964); Annot., "Foreign Sovereign-Immunity from Suit," 25 A.L.R.3d 322 (1969). This jurisdictional holding in no way, however, prejudges the question of the ultimate liability of Romania for the acts of Vinexport and its predecessors. It is based on the plaintiff's allegation that Vinexport and its predecessors are and were the alter ego of the State of Romania.

What is left then is the amenability of the defendants to suit in this district under the Illinois long arm statute.

As we have seen, Count I purports to allege, *inter alia,* that plaintiff was granted an exclusive distributorship of Romanian wines by defendants which embraced Chicago, a promotional meeting conducted in Chicago jointly by an agent of defendant Romania and plaintiff, substantial performance by plaintiff in Chicago in furtherance of the distributorship, the wrongful termination of the distributorship by the defendants and, alternatively, as the result of a conspiracy among certain defendants maliciously to deprive plaintiff of the distributorship, a meeting in Chicago between two of the defendants in furtherance of the conspiracy, and the exclusion of plaintiff from the Chicago market.

The Illinois long arm statute was intended to extend jurisdiction to the maximum reach permissible under due process of law. *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957). Due process of law, however, requires that a defendant have minimal contacts with the forum in which jurisdiction is asserted. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Section 17 of the Illinois Civil Practice Act as made applicable here by Rule 4(e), authorizes the exercise of jurisdiction over defendants in respect to claims arising out of the transaction of business or the commission of a tortious act in Illinois. A defendant is deemed to commit a tortious act in Illinois if his conduct, although performed out of state, causes injury here, provided he could have reasonably anticipated that his conduct could result in injury here. *Gray v. American Radiator Co.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).

We conclude that insofar as Count I is concerned, defendants have submitted to the jurisdiction of Illinois' courts and hence to this court by way of their transaction of business here and the commission of tortious acts here. *Fisons Limited v. United States,* 458 F. 2d 1241 (7th Cir. 1972), *cert. denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); *Consolidated Laboratories v. Shandon,* 384 F.2d 797 (7th Cir. 1967); *Jack O'Donnell Chevrolet Inc. v. Shankles,* 276 F.Supp. 998 (N.D.Ill. 1967). Of course, the fact that plaintiff is not a resident of the forum state is immaterial. *Scoville Mfg. Co. v. Dateline Electric Co.,* 461 F.2d 897, 900 (7th Cir. 1972).

The same is not true of Count II, however. There plaintiff alleges an individual transaction in respect to which there was no Illinois conduct or contact and none was anticipated. While it may be that the claim there asserted will be subsumed by the claim under Count I, it cannot stand alone. Section 17(3) of the Illinois Civil Practice Act which we must follow does

not permit the joinder of a claim which is wanting in personal jurisdictional facts with one which is supported by those facts. Ill.Rev.Stat.1973, ch. 110, § 17(3).

For the foregoing reasons the motion to quash service and dismiss is denied as to Count I and granted as to Count II of plaintiff's amended complaint; defendants are ordered to answer Count I within 20 days; Count II is dismissed. Cause set for report on status October 23, 1975 at 10:00 a. m.