54377. JET AMERICA, INC. v. GATES LEARJET CORPORATION et al.
54378. EXECUTIVE JET SALES, INC. v. JET AMERICA, INC. et al.
54379. GATES LEARJET CORPORATION v. JET AMERICA, INC. et al.

SMITH, Judge.

In case number 54377, Jet America appeals from the grant of Gates Learjet's motion to dismiss, which alleged lack of personal jurisdiction, lack of venue, insufficiency of process and inadequate service of process. Jet America also appeals from the grant of Gates' motion to dismiss Count 2 of the complaint, based on breach of warranty. In case number 54379, Gates cross appeals from the denial of its motions to dismiss, which alleged that the statute of limitation barred Jet America's action, that Jet America had released Gates, and that Jet America had assigned its cause of action to its insurance company. And, in case number 54378, Executive Jet Sales appeals from the denial of its motion to dismiss, which alleged lack of personal jurisdiction. In case number 54377, we affirm the judgment in part and reverse it in part; we dismiss the appeal in case number 54378; and, we affirm the judgment in case number 54379.

Jet America brought this action sounding in negligence and breach of warranty against Gates and Executive Jet, who were, respectively, the manufacturing company and repair facility of a certain Learjet belonging to Jet America. Jet America sought recovery for damages occurring to the plane when, on February 14, 1970, it crashed on landing at the Hartsfield International Airport, the accident allegedly having been caused by a defective braking system. Jet America alleged negligent failure to warn of the danger as well as negligent manufacture, design, and repair. The court dismissed the

complaint against Gates and entered final judgment pursuant to CPA § 54 (b) (Code Ann. § 81A-154 (b)); however, the court denied Executive Jet's motion to dismiss, and that case remains pending below.

The evidence introduced on Gates' motion to dismiss indicated that Gates was a Kansas-based, large-scale manufacturer of the Learjet, an aircraft used almost exclusively for interstate and intercontinental transportation. Officers of Gates deposed that it had sold approximately 570 of the aircraft, each of which had a range of up to 3,000 miles, and that jets it manufactured might be found at airports in every state. Jet America's purchase of the Learjet involved, which was built, sold and delivered by Gates in Wichita in 1965, took place outside of Georgia in 1968. Prior to the corporation which sold the jet to Jet America, three other corporations had bought and sold the plane outside of Georgia. The evidence also showed that, prior to 1967, Gates distributed its product throughout the United States by means of distributorship arrangements with various dealers and factories. In 1967, Gates entered into a master distributorship with Gates Aviation Corporation, to which, in Wichita, Gates sold each of its newly manufactured Learjets. GAC itself, a separate corporation, would then search nationwide for the ultimate purchaser. In 1969, GAC became Gates' wholly owned subsidiary. Also in 1969, GAC stationed two salesmen in an Atlanta office, whose admitted responsibility was "to sell new aircraft" manufactured by Gates. On at least two occasions prior to the subject accident, these Atlanta salesmen demonstrated Gates Learjets for prospective Georgia purchasers.

1. Jet America predicates jurisdiction over Gates on Ga. L. 1970, pp. 443, 444 (Code Ann. § 24-113.1 (b)), which provides: "A court of this State may exercise personal jurisdiction over any nonresident. . . as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he: . . . (b) Commits a tortious act or omission within this State. . ." Our courts have held that the Long-Arm Statute confers jurisdiction over

nonresidents to the maximum extent permitted by due process. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58 (195 SE2d 399) (1973); *Value Engineering v. Gisell,* 140 Ga. App. 44 (230 SE2d 29) (1976). International Shoe Co. v. Washington, 326 U. S. 310 (66 SC 154, 90 LE 95) (1945), established the following test as applicable for determining the extent to which due process allows jurisdiction over a nonresident: "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id., 316. We hold that Gates had the requisite "minimum contacts" with Georgia and that, therefore, the lower court had personal jurisdiction over Gates. Those minimum contacts are manifested both by Gates' large-scale manufacture and sale of an aircraft inherently appropriate only for interstate and intercontinental flight and by Gates' distribution of its product through GAC's Georgia office. Because of the nature both of its product and of its distributorship system, it was reasonably foreseeable that Gates' negligence in manufacturing a Learjet would have tortious consequences in Georgia. Gates had " 'sufficient causal responsibility' for the introduction of the [aircraft] into Georgia to answer for the injuries done here as the result." *Value Engineering,* supra, p. 48. The following analysis applies to Gates: "To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefitted, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state.

"With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly

with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432 (176 NE2d 761) (1961). Contrary to Gates' assertion, *Shellenberger v. Tanner,* 138 Ga. App. 399 (227 SE2d 266) (1976), e.g., does not require the court to decline to exercise jurisdiction merely because Jet America is also a nonresident. *Schuehler v. Pait,* 239 Ga. 520 (3) (238 SE2d 65) (1977).

2. Furthermore, as to Gates, process, service of process and venue were proper. Ga. L. 1966, pp. 343, 344 (Code Ann. § 24-115); Ga. L. 1968, p. 1419 (as amended by Ga. L. 1970, pp. 443, 445) (Code Ann. § 24-116).

3. Because of the lack of contractual privity between Jet America and Gates, the trial court properly dismissed Jet America's cause of action sounding in breach of warranty. *Stewart v. Gainesville Glass Co.,* 131 Ga. App. 747 (206 SE2d 857) (1974), affd. in *Stewart v. Gainesville Glass Co.,* 233 Ga. 578 (212 SE2d 377) (1975).

4. The trial court correctly denied Gates' motion to dismiss which alleged that the entire action was barred by the statute of limitation. Jet America complained, inter alia, that Gates negligently failed to warn the former of the potentiality for harm presented by the jet's braking system, "and the statute of limitation does not commence to run under these circumstances until such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard." *Everhart v. Rich's, Inc.,* 229 Ga. 798, 802 (194 SE2d 425) (1972).

5. Since Jet America's alleged release purports only to discharge its insurance company and not Gates, the latter's contention it was released is meritless. *Motel Mgt. Systems, Inc. v. Billing,* 143 Ga. App. 702 (1) (1977).

6. Jet America's complaint sought recovery both for damage to the plane and for its loss of income during the

time period from February 14 to May 15, 1970, when the plane was being repaired. Therefore, the court correctly denied Gates' motion to dismiss the entire complaint alleging Jet America had, on February 12, 1971, signed an agreement purporting to transfer the Learjet to its insurance company, the consideration for which was the latter's payment of the claim for damage to the plane. Cf. *Parker Plumbing &c. Co. v. Kurtz,* 225 Ga. 31 (165 SE2d 729) (1969).

7. Since Executive Jet's appeal is from a nonfinal order and since Executive Jet did not follow interlocutory review procedure, its appeal must be dismissed. Ga. L. 1975, pp. 757, 758 (Code Ann. § 6-701(a) 2); *Padgett v. Cowart,* 232 Ga. 633 (208 SE2d 455) (1974).

*Judgment in case No. 54377 reversed in part and affirmed in part; judgment in case No. 54379 affirmed; the appeal dismissed in case No. 54378. Bell, C. J., and McMurray, J., concur.*

ARGUED SEPTEMBER 20, 1977 — DECIDED FEBRUARY 20, 1978 — REHEARING DENIED MARCH 14, 1978 — CERT. APPLIED FOR.

*Swift, Currie, McGhee & Hiers, Glover McGhee, Hartley & Reid, G. Michael Hartley, George C. Reid, J. Arthur Mozley, N. Forrest Montet, David M. Leonard,* for Jet America, Inc. et al.

*N. Forrest Montet, David M. Leonard, Phillips, Hart & Mozley, J. Arthur Mozley,* for Gates Learjet Corp. et al.

*N. Forrest Montet, David M. Leonard,* for Executive Jet Sales, Inc.