54378. EXECUTIVE JET SALES, INC. v. JET AMERICA, INC. et al.

Smith, Judge.

*Executive Jet Sales, Inc. v. Jet America, Inc.,* 242 Ga. 307 (1978), having reversed our initial disposition of this case (see *Executive Jet Sales, Inc. v. Jet America, Inc.,* 145 Ga. App. 258 (7) (243 SE2d 584) (1978)), it now becomes our responsibility to consider the propriety of the trial court's denial of Executive Jet Sales' motion to dismiss. We affirm.

Appellee Jet America sued appellant for damages

occurring to Jet America's Atlanta-based Learjet when, on February 14, 1970, it crashed at Atlanta's Hartsfield International Airport. Appellee alleged that appellant's negligence in repairing and inspecting the jet's braking system was a substantial contributing cause of the accident. Appellant moved the trial court to dismiss the action for lack of personal jurisdiction, and the court, reasoning as follows, refused to do so: "There was sufficient evidence tendered by the plaintiff," including "evidence of the range of activities of this defendant, its anticipation of the approximate [sic] results of those activities in the State of Georgia, and other activities, to establish the necessary contacts with the State of Georgia to submit Executive Jet Sales, Inc. to jurisdiction under the Georgia Long Arm Statute."

Appellant is an Ohio-based, FAA-licensed "repair station" engaged in the maintenance, inspection and repair of jet aircraft. Appellant's parent company, Executive Jet Aviation, Inc., is in the business of interstate transportation of corporate executives and solicits clients from an Atlanta office. The relationship between appellant and its parent is best described by Frank Conace, the Vice President of Administration of both corporations: "Executive Jet Sales owns aircraft, keeps them in operating condition, maintains them and leases them under a written lease agreement to Executive Jet Aviation, Inc., who in turn has pilots on their payroll and solicits contracts or flights and will operate those aircraft to perform those flights." Jets maintained by appellant and leased to Executive Jet Aviation regularly fly into and out of every state in the continental United States. According to Conace, "The number of flights which terminated or originated within any state would number up into the thousands."

Forty percent of appellant's maintenance is "outside" work, performed for companies other than its parent (the "inside" customer). These customers "include private corporations as well as air taxi operators and charter outfits," and they are located at various places throughout the United States. (Ninety-seven percent of appellant's outside clients are located in states other than Ohio.) At least two of appellant's outside customers are

Georgia-based, and these customers, like the Washington-based appellee, ferry their jets to Ohio for appellant to perform services on them. Appellee, as a matter of course during years prior to the accident,[1] had been delivering its Atlanta-based Learjet to Ohio for periodic inspection and repair by appellant. As to the extent of the performed services, appellant from time to time disassembles and rebuilds clients' aircraft. Appellant also fabricates many of the parts which it places in the jets being serviced.

At the annual inspection performed in Ohio by appellant in late February, 1969, appellant certified that appellee's Learjet was "airworthy for return to service," a certification which appellant made for each jet it maintained, after successful completion of the annual inspection. Appellant also gave the involved aircraft a 100-hour inspection "on or about December 1, 1969." Appellant knew that the appellee's aircraft had its home base in Atlanta and assumed, as it assumed for each of the aircraft which it serviced, that it would be returning to its base. Appellee alleged that appellant's negligence, particularly on the two occasions noted above, was a cause of the crash.

The nature of the Learjet is such that it is suited only for interstate travel, and this fact is substantiated by Conace, who deposed: "A Learjet or any type of jet aircraft which we do our maintenance on would be hardput to be confined to a single state, and, therefore, it would be engaged in interstate travel, probably in most cases for private owner purposes."

We believe that, based on the evidence, the trial court was authorized to conclude that subjecting appellant to Georgia jurisdiction was not a violation of due process. Particularly because of the character and extent of the services appellant performed, the nature of the aircraft which it maintained and the qualities and locations of its customers, it was reasonably foreseeable that appellant's

---

[1]On 14 different occasions during 1968 and 1969, appellee brought the involved aircraft to Ohio for appellant to do maintenance and repair work.

negligence would have tortious consequences in Georgia. Ga. L. 1970, pp. 443, 444 (Code Ann. § 24-113.1(b)); *Jet America, Inc. v. Gates Learjet Corp.*, 145 Ga. App. 258 (1) (243 SE2d 584) (1978); *Value Engineering Co. v. Gisell*, 140 Ga. App. 44 (230 SE2d 29) (1976).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED DECEMBER 5, 1978 —
REHEARING DENIED DECEMBER 19, 1978 —

*Phillips, Hart & Mozley, J. Arthur Mozley, N. Forrest Montet, David M. Leonard,* for appellant.

*Swift, Currie, McGhee & Hiers, Glover McGhee, Hartley & Reid, G. Michael Hartley, J. Arthur Mozley, George C. Reid,* for appellees.