**VOLKSWAGENWERK, A. G. and Volkswagen of America, Appellants/Cross-Appellees,**

v.

**KLIPPAN, GmbH, Appellee/Cross-Appellant.**

Nos. 4336, 4368.

Supreme Court of Alaska.

May 9, 1980.

David H. Thorsness, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Joseph L. Young, Atkinson, Conway, Young, Bell & Gagnon, Theodore R. Dunn, Dunn, Baily & Mason, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER, and BURKE, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

On December 24, 1972, Dr. Charles R. Munns suffered injuries in an automobile accident while driving his 1967 model Volkswagen Beetle. Dr. Munns subsequently brought suit to recover for his injuries against the offending driver, the manufacturer of the Munns vehicle, Volkswagenwerk, A. G. (VWAG) and its importer, Volkswagen of America, Inc. (VWoA).

The only claim submitted to the jury against the defendants was that the original equipment seat belt in the vehicle was defective and that the defect was a proximate cause of Dr. Munns's injuries. The manufacturer and supplier of the seat belt, Klippan, GmbH (Klippan), was eventually asked by VWAG to participate in the defense of the case following pretrial conference, but Klippan refused. Klippan also rejected a tender of the defense of the Munns case by VWAG and VWoA. One of Klippan's safety engineers did assist VWAG and VWoA in the preparation of the Munns case and served as an expert witness, although Klippan maintains he did not do so as a representative of Klippan.

The jury awarded a verdict against all three defendants in the Munns case, and judgment in the amount of approximately $9,300,000 was entered. While the case was on appeal to this court a settlement in the amount of $5,015,000 was negotiated between the defendants and Dr. Munns.

After entry of the judgment in the Munns case, the instant action was brought in Alaska by VWAG and VWoA against Klippan and its parent corporation, Allied Chemical Corporation, seeking payment of all or part of the judgment on contractual grounds and under statutory and equitable principles [1] of indemnity and contribution. Klippan then filed a declaratory judgment action against VWAG in Germany in which

1. Everett D. Vaughn, driver of the other vehicle in Dr. Munns's accident, was originally joined as a defendant but was dismissed from the action with prejudice by stipulation of the parties, after settlement with Dr. Munns.

it sought a determination of what obligations, if any, it owed to VWAG under German law as a result of the Munns accident. Among the affirmative defenses which Klippan asserted in the Alaska action were that the superior court lacked personal jurisdiction over Klippan, and that a forum selection clause contained in the contract by which Klippan supplied seat belt restraint systems to VWAG limited litigation exclusively to a German forum. The superior court determined that jurisdiction over Klippan existed, but dismissed the contribution and indemnity actions on the basis of the forum selection clause, holding the clause bound both VWAG and VWoA. VWAG and VWoA now bring this appeal from the superior court's decision with respect to the forum selection clause. On cross-appeal, Klippan challenges the superior court's jurisdictional determination.

## I. *Superior Court's Jurisdiction as to Klippan*

We affirm the superior court's ruling regarding its jurisdiction as to Klippan. Personal jurisdiction over a foreign or out-of-state defendant whose products cause injury to persons or property within this state is conferred by AS 09.05.015, Alaska's "long-arm" statute. We have construed this statute to extend Alaska's jurisdiction to the maximum reach consistent with the guarantees of due process under the Fourteenth Amendment, *Jonz v. Garrett/Airsearch Corp.*, 490 P.2d 1197 (Alaska 1971). Thus the sole question which must be addressed in regard to this specification of error is whether the application of Alaska's "long-arm" statute to Klippan in the circumstances of this case is in violation of due process.

■■■■ In order to meet due process standards personal jurisdiction over a non-resident defendant requires certain minimum contacts with the state "[so] that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When a manufacturer voluntarily places its product in the general stream of commerce without restriction, the "minimum contact" requirement is satisfied in all forums where it is foreseeable to the manufacturer that the product may be marketed. *Commodities World Int'l. Corp. v. Royal Mile, Inc.*, 440 F.Supp. 1373, 1378–79 (D.C. Puerto Rico 1977); *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). The "stream of commerce" doctrine has been adopted by the majority of American jurisdictions having long-arm statutes.[2] In *Modern Trailer Sales, Inc. v. Traweek*, 561 P.2d 1192, 1196 (Alaska 1977), quoting *Jones Enterprises, Inc. v. Atlas Service Corp.*, 442 F.2d 1136, 1140 (9th Cir. 1971) we indicated our approval of the stream of commerce rule.

■■■■ In our view Klippan has sufficient minimum contacts with the State of Alaska, by deliberately placing their seat belt restraint system in the general stream of commerce, to meet due process standards for personal jurisdiction. Klippan has sold millions of seat belt assemblies for incorporation into automobiles it knew were destined for purchase by consumers throughout the United States. Alaska law required installation of lap belts in all automobiles sold in this state during 1967, the model year of the Munns car.[3] Klippan represented by a label sewn on the belt involved in

**2.** See, e. g. *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231, 235 (9th Cir. 1969) (applying Hawaii law); *Sells v. International Harvester Co., Inc.*, 513 F.2d 762, 763 (5th Cir. 1975) (Alabama law); *Thorton v. Toyota Motor Sales U.S.A.*, 397 F.Supp. 476, 482 (N.D.Ga. 1975) (Georgia law); *Look v. Hughes Tool Co.*, 367 F.Supp. 1003, 1006 (D.N.H.1973) (New Hampshire law); *Benn v. Linden Crane Co.*, 326 F.Supp. 995, 997 (E.D.Pa.1971) (Pennsylvania law); *Alliance Clothing Ltd. v. District Court*, 187 Colo. 400, 532 P.2d 351, 354 (1975)

(en banc); *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 272 (Iowa 1973); *Cole v. Doe*, 77 Mich.App. 138, 258 N.W.2d 165, 168 (1977); *Ehlers v. U. S. Heating & Cooling Mgr. Corp.*, 267 Minn. 56, 124 N.W.2d 824, 827 (1963); *Certisimo v. Heidelberg*, 122 N.J.Super. 1, 298 A.2d 298, 303 (1972); *aff'd. sub. nom. Van Eeuwen v. Heidelberg Eastern, Inc.*, 124 N.J.Super. 251, 306 A.2d 79 (1973).

**3.** 13 AAC 04.270.

the Munns accident that its restraint systems were "approved for sale in all states," and took steps to insure that the belts complied with standards established by the American Society of Automotive Engineers. Klippan thus knew or had reason to believe that its seat belts could be distributed and sold for use in Alaska, and did not limit the sale or marketing of the restraint system in the United States. *See Keckler v. Brookwood Country Club,* 248 F.Supp. 645, 649 (N.D.Ill.1965); *Commodities World Int'l. v. Royal Mile, Inc.,* 440 F.Supp. 1373, 1379 (D.C.Puerto Rico 1977); *Mann v. Frank Hrubetz & Co., Inc.* 361 So.2d 1021, 1025 (Ala.1978).

Klippan argues that the stream of commerce doctrine should not apply to the manufacturer of a component part of a product which is widely distributed by another entity. The modern trend of case law indicates otherwise where, as here, the component manufacturer deliberately designs its product in anticipation of it being widely marketed in American jurisdictions, and sells the component directly to several major auto producers with the knowledge that the component will be incorporated into their products and sold throughout America.[4] The fact that Klippan did not directly engage in business dealings in Alaska does not relieve it from answering for injuries which may result from use of its product in this state. It was entirely foreseeable to Klippan, from its own conduct, that a number of its restraint systems would be purchased by consumers in Alaska through normal sales and distribution patterns in the United States.[5] In this regard we have previously pointed out that the chain of distribution is not a significant factor in determining jurisdiction:

> We hold, as did . . . [*Gray*] . . that the fact that some of the purchases were made from independent middlemen or that someone other than the manufacturer caused the product to be shipped into the state are not controlling factors.

*Stephenson v. Duriron Co.,* 401 P.2d 423, 429 (Alaska 1965), *cert. denied,* 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360 (1965).[6]

---

4. As stated in *Dotterweich v. Yamaha International Corp.,* 416 F.Supp. 542, 550 n.11 (D.Minn.1976):

> A party's status as a component part manufacturer does not in all instances foreclose the exercise of jurisdiction. Such an exercise of jurisdiction does not offend due process if minimal contacts are established.

*See also, Sells v. International Harvester Co., Inc.,* 513 F.2d 762 (5th Cir. 1975); *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.,* 510 F.2d 1029 (5th Cir. 1975); *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969).

5. An affidavit submitted by VWoA states that about 600 Volkswagen vehicles were sold in 1967 by authorized dealers in Alaska "which would have been equipped with a seat belt of the type designed and manufactured by Klippan." Klippan asserts that VWAG procured seat belts from more than one manufacturer during 1967, and so disputes that it is proven any Klippan-equipped Volkswagen actually reached Alaska other than Dr. Munns's car, which was originally purchased in Utah. This dispute does not alter our opinion with regard to the foreseeability to Klippan that a number of Klippan-equipped vehicles would be sold directly for use in Alaska through dealerships here and in other states.

6. We take note that a very recent United States Supreme Court case, *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), had indicated that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process clause." At 295, 100 S.Ct. at 566. In that case, plaintiffs who had bought an Audi automobile in New York attempted to sue the automobile retail dealer and its wholesaler as well as the importer and manufacturer of the car (VWoA and VWAG) in Oklahoma, where they had an accident in the vehicle. The Supreme Court held that for Oklahoma to assert personal jurisdiction over the retail dealer and wholesaler would violate their due process rights, because both were New York corporations which had no business contacts with Oklahoma and which had not attempted in any way to market any cars in Oklahoma or otherwise derive benefit from Oklahoma's laws. To hold otherwise, stated the court, would mean "[e]very seller of chattels would in effect appoint the chattel his agent for service of process." *Id.* This is *not* in conflict with the principle we assert here, though. Klippan, in contrast to the local distributors sued in the *World Wide* case, has deliberately designed and placed its product with a manufacturing and sales organization which it knew would market its product throughout the fifty states. The *World Wide* opinion explicitly recognizes this distinction:

We likewise reject Klippan's argument that the stream of commerce theory should not apply where the party attempting to assert jurisdiction is a non-resident corporation bringing an indemnity or contribution action separate from the original products liability lawsuit. Where a party is answerable in damages for injury occurring in this state, it is no more burdensome for that party to defend a separate indemnity action than to appear in the original suit.[7] The fact that the party seeking indemnity or contribution is a foreign corporation rather than the original injured plaintiff is not a justification for immunizing an ultimately responsible party from liability under the laws of the state where the injury occurred, *see, e. g., Washington v. U. S. Suzuki Motor Corp.*, 257 Pa.Super. 482, 390 A.2d 1339, 1341 (1978); *Rovin Sales Co. v. Socialist Republic of Romania*, 403 F.Supp. 1298, 1302 (N.D.Ill.1975); *Jet America, Inc. v. Gates Learjet Corp.*, 145 Ga.App. 258, 243 S.E.2d 584, 587 (1978).

Finally, we reject Klippan's contention that to subject it to jurisdiction in Alaska would be so unreasonable as to violate due process. *See Stephenson v. Duriron Co.*, 401 P.2d 423, 429 (Alaska 1965). Inconven-

ience to at least some parties will probably be associated with litigation in either this jurisdiction or the German forum which Klippan prefers. It appears that legal doctrine, documents, exhibits, witnesses, and counsel from both Germany and Alaska may be involved in the action. Of the named parties, two are German and two are American corporations. The original injury and underlying litigation occurred in this state. Under these circumstances, Alaska's jurisdictional power must be upheld despite claims of inconvenience and unreasonableness by Klippan.

## II. Forum Selection Clause and VWAG

We also affirm the superior court's enforcement of the forum selection clause against VWAG. The clause in question was drafted by VWAG, and incorporated as a part of the purchase order which served as the contractual agreement between Klippan and VWAG for the sale of Klippan's seatbelt assemblies to VWAG. The clause in translation reads:

> Venue for all disputes that may result from our orders is the court of competent jurisdiction for Wolfsburg.

Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Id.*

7. This conclusion holds true where the original defendant distributor of a defective product settles with the injured plaintiff and then seeks indemnity against the manufacturer after the originally injured party has been dismissed from the action. This situation occurred in *Ross v. Spiegel, Inc.*, 53 Ohio App.2d 297, 373 N.E.2d 1288 (1977), where the court stated:

It is unfair that a defendant be able to insulate itself against personal jurisdiction in a state where an injury is caused by its product and where the goods were actually sold and used by selling its goods to a middleman distributor and washing its hands of any knowledge of where the goods are actually sold and used. For this reason, the 'stream of commerce' theory has evolved for holding a foreign manufacturer subject to personal jurisdiction in the state where a sale is made and a claim occurs, if that defendant places a substantial amount of goods into the flow of commerce in the United States so that it can reasonably be anticipated that part of the goods will be sold in the forum state. (citations). *The due process test of fair play and substantial justice is satisfied where the defendant, a large company, derives substantial sales revenues from the United States market place even though its sales are made outside the state of Ohio for distribution wherever the immediate purchaser of its product deems best.*

*Id.*, 373 N.E.2d at 1293 (emphasis added). *Accord, Sells v. International Harvester, Inc.*, 513 F.2d 762, 764 (5th Cir. 1975); *Beetler v. Zotos*, 388 F.2d 243, 246 (7th Cir. 1967), *rehearing denied*, 1968.

The validity and interpretation of a forum selection clause is a question of first impression in Alaska. These clauses provide for the designation of a specific forum for the litigation of disputes between the parties to the agreement. They may take either of two forms generally. One type of clause denotes a consent to personal jurisdiction by the parties to a particular forum, but not to the exclusion of other forums; the other form of clause designates a forum as the mandatory, exclusive arena for the resolution of all disputes to which the clause applies, even though other courts might have personal jurisdiction over the parties. Gilbert, *Choice of Forum Clauses in International and Interstate Contracts*, 65 Ky. L.J. 1, 5–7 (1976).

■ At common law, forum selection clauses were generally considered *per se* invalid on the grounds that a court's jurisdiction could not be contravened by an agreement between litigating parties or that they were against public policy. *See,* Reese, *The Contractual Forum: Situation in the United States*, 13 Am.J.Comp.L. 187, 188 (1964). While many courts still adhere to the common law rule,[8] the recent and favored trend is to apply a "reasonableness" test in determining whether to enforce such a clause, once it is concluded that it truly specifies a mandatory, exclusive forum for the litigation of the dispute in question.[9] This test has been expressed according to varying formulas.[10] The current status of the law with respect to forum selection clauses in international commercial agreements, however, centers around *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The United States Supreme Court in that case stated:

> There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect. . . . Manifestly much uncertainty and possible great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur . . . . The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade.

> .   .   .   .   .

> [I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that

**8.** See, e. g., *Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535 (Tex.1972); *Cartridge Rental Network v. Video Entertainment Inc.*, 132 Ga.App. 748, 209 S.E.2d 132 (1974); *Fidelity and Deposit Co. of Md. v. Gainesville Iron Works, Inc.*, 125 Ga.App. 829, 189 S.E.2d 130 (1972).

**9.** E. g., *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Copperweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953, 964–966 (3d Cir. 1978); *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011, 1015–1016 (S.D.W.Va. 1976). See Gilbert, *Choice of Forum Clauses in International and Interstate Contracts*, 65 Ky. L.J. 79 (1976); Collins, *Choice of Forum and the Exercise of Judicial Discretion, The Resolution of an Anglo-American Conflict*, 22 Int. and Comp.L.Q., 332, 338–343 (1973); Restatement (Second) of Conflict of Laws § 80 (1971).

**10.** The Model Choice of Forum Act, adopted in a few states, provides the following criteria: SECTION 3. [Action in Another Place by Agreement]. If the parties have agreed in writing that an action of a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless
(1) the court is required by statute to entertain the action;
(2) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action;
(3) the other state would be a substantially less convenient place for the trial of the action than this state;
(4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or
(5) it would for some other reason be unfair or unreasonable to enforce the agreement. 17 Am.J.Comp. 1. 293–96 (1969). See also, Gilbert, *supra*, at 30 n.164.

he will for all practical purpose be deprived of his day in court. *Absent that, there is no basis for concluding that it would be unfair, unjust or unreasonable to hold that party to his bargain.*

407 U.S. at 12–13, 92 S.Ct. at 1914–1915, 1917, 1918, 32 L.Ed.2d at 522–23, 525 (emphasis added). After placing this heavy burden on a party attempting to show that a forum selection clause is unreasonable, the Supreme Court in *Bremen* approved of voiding such a clause on public policy grounds:

> A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

407 U.S. at 15, 92 S.Ct. at 1916, 2 L.Ed.2d at 523.

■ We conclude that the forum selection clause to which VWAG secured Klippan's agreement unambiguously designates the Wolfsburg court of competent jurisdiction as the sole and exclusive forum to which either party must submit "all disputes that may arise" from the purchase orders for the seat belt assemblies at issue. The language is mandatory. "Venue . . . is . . . *the* court" (emphasis added). This language compares closely with the mandatory and exclusive clause in *Bremen*, which states "[a]ny dispute arising must be treated before the London Court of Justice." 407 U.S. at 2, 92 S.Ct. at 1909, 32 L.Ed.2d at 516. It is quite distinguishable from the permissive, nonexclusive clauses cited by VWAG. In *Engel v. Shubert Theatrical Co.*, 166 App.Div. 394, 151 N.Y.S. 593, 594 (App.Div.1915), the parties stated that they "agree to submit to the jurisdiction of the Vienna courts" in case of dispute. In *Reavis v. Exxon Corp.*, 90 Misc.2d 980, 396 N.Y.S.2d 774, 777 (App.Div.1977), the city of Caracas was designated as "a special domicile . . . subject to the jurisdiction of the Courts of the Federal District."

We also conclude that the instant forum selection clause encompasses the subject matter of this dispute. VWAG characterizes its action as one for indemnity and contribution arising solely from Alaska statutory law and equitable principles rather than from contract. Yet VWAG's complaint in this action also alleges breach of express or implied warranties of merchantability and fitness for ordinary purposes. In *Bremen* the United States Supreme Court fully enforced a forum selection clause in the contract applicable to "any disputes arising" in an action alleging negligence in tort as well as breach of contract. 407 U.S. at 4, 92 S.Ct. at 1910, 32 L.Ed.2d at 517. We further agree with the superior court's conclusion that any ambiguity in the clause in this regard should be resolved against the maker of the contract, VWAG. *See Zapata Marine Service v. O/Y Finnlines Ltd.*, 571 F.2d 208, 209 (5th Cir. 1978).

VWAG also argues that the issue of the validity of the forum selection clause should not have been determined prior to its submission of affidavits as to the intent in drafting the provision. From the record it is clear that the question of ambiguity was raised and argued before the superior court prior to its dismissal of the action. VWAG had an opportunity at that time to present extrinsic evidence to aid interpretation of the clause, of which it did not take advantage.

Enforcing the forum selection clause against VWAG will not be unreasonable or against any public policy under the *Bremen* criteria. No evidence has been shown of unequal bargaining power or fraud which worked to the disadvantage of VWAG in negotiating the agreement. 407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 522. VWAG contends that it is unlikely to obtain a remedy in the German forum, based on allegations in Klippan's complaint in its action in a German court that no right of contribution or indemnity based on strict liability exists. Yet VWAG has not denied that it has an opportunity to fully present its legal position in the German forum. The scanty

materials on German law submitted to this court leave us unconvinced that a remedy will be unavailable to VWAG in Germany. VWAG's own pleadings in the pending German action maintain that Klippan is liable under German and Alaska law to indemnify VWAG for the amount of settlement with Dr. Munns. The only direct citation to German law furnished to this court provides for a right of contribution between "joint debtors." German Civil Code, Sec. 426, par. 1. Given this record we cannot conclude that VWAG has met its burden under *Bremen* of showing that enforcement of the clause will for all practicable purpose deprive it of its day in court.[11] And while we have determined that litigation of this case in Alaska would not be so unreasonable as to violate due process of law, it is not apparent to us that forcing VWAG to submit to German jurisdiction in a location convenient to the main parties in the action would be sufficiently inconvenient to allow VWAG to escape from the forum for which it originally bargained. Finally, because the record we have been furnished does not indicate a lack of an indemnity or contribution remedy in the German forum, we also conclude that the policy in favor of these remedies embodied in Alaska law will not be contravened by enforcement of the forum selection clause.

### III. Forum Selection Clause and VWoA

We hold that the superior court erred in enforcing the forum selection clause against VWoA, however. VWoA was not a party to the purchase order contract between VWAG and Klippan. That an identical forum selection clause was agreed to by VWoA in its purchases of autos from VWAG is of no consequence. That forum selection clause applies to disputes concerning transactions between VWAG and VWoA, not VWAG and Klippan or VWoA and Klippan. Likewise, VWoA's status as a wholly-owned subsidiary of VWAG does not justify binding VWoA to VWAG's separate contractual agreement with Klippan. A subsidiary corporation is normally considered an entity separate and distinct from its parent. *Berger v. Columbia Broadcasting Systems, Inc.,* 453 F.2d 991, 994 (5th Cir.), *cert. denied,* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972). The fact that the parent corporation owns all of the stock issued by its subsidiary is not reason enough alone to disregard the separate legal identities of subsidiary and parent. *See Jackson v. General Elec. Co.,* 514 P.2d 1170 (Alaska 1973); *Edgar v. Fred Jones Lincoln Mercury,* 524 F.2d 162, 166 (10th Cir. 1975); *Berger v. Columbia Broadcasting Systems, Inc., supra,* at 994; *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 791 (5th Cir. 1971); *Royal Indus. v. St. Regis Paper Co.,* 420 F.2d 449, 453 (9th Cir. 1969); *Hanson Southwest Corp. v. Dal-mac Constr. Co.,* 554 S.W.2d 712, 716 (Tex.Civ.App.1977); *Unijax, Inc. v. Factory Ins. Ass'n,* 328 So.2d 448, 454 (Fla.App.1976). In *Jackson v. General Elec. Co., supra* at 1173, an action seeking to hold a parent corporation responsible for the tort of its subsidiary, this court described the limited circumstances which do warrant "piercing the corporate veil:"

A parent corporation may be held liable for its subsidiary's conduct when the parent uses a separate corporate form to defeat public convenience, justify wrong, commit fraud, or defend crime. The parent corporation may also be liable for the wrongful conduct of its subsidiary when the subsidiary is the mere instrumentality of the parent. Liability is imposed in such instances simply because the two corporations are so closely intertwined that they do not merit treatment as separate entities.

In that case an opinion letter from counsel "stated to be learned in the Netherlands law" explained that the remedy sought in the American jurisdiction would not be available in the foreign forum. 154 F.Supp. at 888–89.

---

11. The bare pleadings and single citation to the German Civil Code in this case fall short of the evidence submitted in *Chem. Carriers Inc. v. L. Smit & Co.'s Internationale Sleepdienst,* 154 F.Supp. 886 (S.D.N.Y.1957), cited by VWAG.

See also *Elliot v. Brown*, 569 P.2d 1323, 1326 (Alaska 1977); *Bendix Corp. v. Adams*, 610 P.2d 24, (Alaska, 1980). The party seeking to have the indemnity of parent and subsidiary corporation treated as one has the burden of proof to show that the necessary circumstances exist. *In re Beck Industries*, 479 P.2d 410, 417 (2d Cir.), *cert. denied* 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973). Klippan has failed to present evidence that VWoA is a mere instrumentality of VWAG. Evidence in the record on the contrary shows that VWoA purchases autos outright from VWAG under contractual agreement and resells them to other distributors under separate contracts, as well as purchasing and selling on its own account autos and other products from manufacturers other than VWAG. VWoA is incorporated in a separate jurisdiction from VWAG, maintains its own separate records, owns property in its own name, conducts its own legal and financial affairs and in short carries on business as a separate entity from VWAG. VWoA contributed one-half of the settlement sum paid to Dr. Munns from its own funds. These factors—independence of the subsidiary in the conduct of its business, contractual definition of its relationship to the parent corporation, and adequate capitalization of the subsidiary—were considered important criteria in the determination of whether the subsidiary should be treated as a mere instrumentality of its parent corporation in *Jackson, supra*.[12] Thus Klippan has not met the burden of proof required to subject VWoA to the forum selection provision of a contract entered into by VWAG and Klippan. *See, e. g. York Chrysler-Plymouth, Inc., v. Chrysler Credit Corp.*, 447 F.2d 786, 791 (5th Cir. 1971), *Berger v. Columbia Broadcasting Systems, Inc.*, 453 F.2d 991, (5th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

The decision of the Superior Court is Affirmed with respect to dismissal of VWAG's action and Reversed with respect to dismissal of VWoA's action. This case is remanded to the superior court for further proceedings in accordance with this opinion.

MATTHEWS, J., not participating.

---

**12.** 514 P.2d at 1174. In *Jackson*, the following criteria to consider in determining whether a subsidiary corporation should be treated as an instrumentality of its parent were listed:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

514 P.2d at 1173. Another basis for treating parent and subsidiary as one, mentioned in *Jackson*, is when the subsidiary acts as an agent of the parent for some purpose. 514 P.2d at 1173 n.8. This situation is not present in this case.