Ross et al., Appellees, v. Spiegel, Inc., et al., Appellees; Textile Alliance Limited et al., Appellants. Ross et al., Appellees; Commercial Union Assurance Companies, Appellant, v. Spiegel, Inc., Appellant; Lorenzo Manufacturing Company et al., Appellees.

[Cite as Ross v. Speigel, Inc. (1977), 53 Ohio App. 2d 297.]

(Nos. 76AP-846 and 76AP-847—Decided September 27, 1977.)

*Mr. Russell H. Volkema* for Melvin L. Ross et al.

*Messrs. Knepper, White, Richards & Miller, Mr. Louis E. Gerber* and *Mr. James A. Readey,* for Commercial Union Assurance Companies and Spiegel, Inc.

*Messrs. Porter, Wright, Morris & Arthur,* and *Mr. Terrance M. Miller,* for Textile Alliance Limited and Castle Peak Garment Manufacturing Co.

*Messrs. Lane, Alton & Horst,* and *Mr. William L. Millard* for C. B. S. Imports.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Thomas Taggart* and *Ms. Mary Ellen Fairfield,* for S. S. Kresge Co., *amicus curiae.*

McCORMAC, J. Melvin L. Ross died of burns received when his pajamas ignited on February 11, 1971, while he was a patient at Mt. Carmel Hospital. A wrongful death action was brought against Spiegel from whom the pajamas were purchased and C. B. S. Imports, the wholesaler, who sold the pajamas to Spiegel for retail distribution. The pajamas were alleged to be dangerously flammable and not fit to be used as wearing apparel.

Spiegel served a cross-claim against C. B. S. Imports asserting that if they, the retailer, were held liable then C. B. S. Imports, from whom they purchased the pajamas are liable over to them. Spiegel also served a third-party complaint against Textile Alliance Limited and Castle Peak Garment Manufacturing Company. Castle Peak and Textile Alliance served motions to dismiss the third-party complaint on the basis that there was no jurisdiction over them. These motions were ultimately overruled.

Prior to trial before the court, Spiegel settled the case with plaintiffs. C. B. S. Imports paid Spiegel $50,000 toward the settlement in exchange for a covenant not to sue. The third-party complaint of Spiegel against Textile Alliance and Castle Peak was then tried to the court, a jury having been waived. The trial court ruled the court had *in personam* jurisdiction over third-party defendants, Textile and Castle Peak, and that the third-party defendants were liable to Spiegel for the breach of an implied contract of indemnity in the amount of $80,610.01. The

judgment was reduced by the $50,000 paid by C. B. S. Imports to an amount of $30,610.01. The amount of the judgment is not in issue.

Textile Alliance and Castle Peak have appealed, setting forth the following assignments of error:

1. "The Trial Court Erred In Ruling That It Had In Personam Jurisdiction Over Third-Party Defendants, Textile Alliance Limited And Castle Peak Garment Manufacturing Company, Ltd."

2. "The Ruling Of The Trial Court That Melvin Ross Did Not Assume The Risk Of His Conduct In Smoking In Bed Is Contrary To The Weight Of The Evidence."

3. "The Ruling Of The Trial Court That The Third-Party Defendants Were Liable To Spiegel For The Breach Of An Implied Contract Of Indemnity Was Contrary To The Weight Of The Evidence And Contrary To Law."

4. "The Trial Court Erred In Failing To Give Effect To The Bar Of The Statute Of Limitations."

Spiegel was cross-appealed, asserting the following assignments of error:

1. "The Trial Court Erred In Failing To Award To Appellees Expenses And Attorneys' Fees For Appellees' Making Of Various Motions To Compel Discovery, Obtaining Various Orders Of Discovery, For The Willful Failure Of Appellants To Comply With Discovery, And For Failing To Award Expenses And Attorneys' Fees Incurred By Appellees In Proving Certain Matters At Trial Which Were Denied By Appellants In Responses To Requests For Admissions."

2. "The Trial Court Erred In Failing To Declare Certain Matters Admitted By Appellants, Which Matters Were Denied By Appellants In Responses To Requests For Admissions."

3. "The Trial Court Erred In Finding That Appellants Had Not 'Transacted Business' In Ohio Under Rule 4.3(A)(1) Of The Ohio Rules Of Civil Procedure."

The principal issue in this case is whether *in personam* jurisdiction was effected over Textile Alliance and Castle Peak.

After extensive discovery, it was shown that Castle

Peak, a corporation for profit organized under the laws of Hong Kong with its principal place of business in Hong Kong, manufactured the pajamas worn by Ross at the time of his death. Castle Peak is a wholly-owned subsidiary of Textile Alliance, also a corporation for profit organized under the laws of Hong Kong with its principal place of business in Hong Kong. Castle Peak is engaged in the cutting, sewing and assembly of garments, including the pajamas herein. All of the goods thus manufactured by Castle Peak are sold directly to Textile who in turn sells the goods to importers in foreign commerce. C. B. S. Imports, a New York corporation, purchased the pajamas from Textile Alliance and ultimately sold them to Spiegel, who in turn retailed them throughout the United States. The specific pajamas worn by Ross were sold in Ohio.

During the years 1969 to 1973, Textile Alliance had sales in the United States amounting to $30,000,000 to $74,000,000, which was a substantial part of their total income. The largest United States customers were nationwide retail stores, such as Spiegel, J. C. Penney, Montgomery Ward, etc., who have numerous retail sales outlets in the United States and in the state of Ohio. Because of the complicated sales procedure and the insulation of the Hong Kong manufacturer and wholesaler from the ultimate sales process, it was difficult to discover evidence concerning the exact amount of revenue derived in Ohio from the sale of goods manufactured by Castle Peak and distributed by Textile Alliance. Moreover, the two Hong Kong corporations failed to comply with Ohio discovery procedure when depositions were taken in Hong Kong.

The basic theory of Spiegel is that if a foreign manufacturer or wholesaler places a substantial amount of goods in the "stream of commerce" in the United States where it can be reasonably expected there will be an ultimate distribution to consumers in Ohio in a substantial amount, there is *in personam* jurdisdiction over these manufacturers in relation to an injury in Ohio proximately re-

sulting from a defect in the goods. On the other hand, appellants contend that the "stream of commerce" theory has no application to in personam jurisdiction in Ohio and that there was insufficient proof that appellants derived substantial revenue from goods used or consumed in Ohio to satisfy the requirements of Civ. R. 4.3.

Spiegel must satisfy two criteria in order to exercise personal jurisdiction over an out-of-state or foreign corporation which is served with process outside Ohio. The first requirement is that the activities of the foreign corporation are such as to render it amenable to the jurisdiction of the state within the limitations of the due process clause of the Fourteenth Amendment. The second requirement is that the activities of the defendant are embodied within the "long-arm" rule, Civ. R. 4.3, which sets forth the requirements for subjecting nonresidents to the jurisdiction of Ohio courts.

The due process standard for exercising jurisdiction over a defendant not present within the forum is whether the defendant has certain minimum contacts within that forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co.* v. *Washington* (1945), 326 U. S. 310. Whether due process is satisfied depends upon the quality and nature of the activity in relation to the claim asserted. It is a qualitative rather than a quantitative standard.

The forum state has an interest in opening its courts to Ohio residents seeking redress from nonresidents who have set in motion activities which ultimately result in an injury in Ohio. In this day and age when both foreign corporations and out-of-state corporations place goods in the "stream of commerce" for distribution throughout the United States, and derive substantial revenue from that distribution, it is reasonable that claims emanating from injuries caused by defective products thus distributed be litigated in the place where the injured victim is found, rather than requiring the injured victim to institute an action against the defendant manufacturer or distributor

in the jurisdiction where it can be located (Hong Kong in this case).

The injury from the breach of warranty occurred in Ohio. Most of the witnesses relating to the claim are located in Ohio. The goods were sold in Ohio. The third-party defendants expected to and did receive substantial revenue from goods sold for distribution in the United States. It is unfair that a defendant be able to insulate itself against personal jurisdiction in a state where an injury is caused by its product and where the goods were actually sold and used by selling its goods to a middleman distributor and washing its hands of any knowledge of where the goods are actually sold and used. For this reason, the "stream of commerce" theory has evolved for holding a foreign manufacturer subject to personal jurisdiction in the state where a sale is made and a claim occurs, if that defendant places a substantial amount of goods into the flow of commerce in the United States so that it can reasonably be anticipated that part of the goods will be sold in the forum state. See *Alliance Clothing Ltd.* v. *District Court* (1975), 187 Colo. 400, 532 P. 2d 351. The due process test of fair play and substantial justice is satisfied where the defendant, a large company, derives substantial sales revenue from the United States market place even though its sales are made outside the state of Ohio for distribution wherever the immediate purchaser of its product deems best. The facts elicited in this case satisfy the due process standard. There is no constitutional impediment toward exercising jurisdiction over the Hong Kong defendants.

Even though a particular state is free to protect its residents by providing a forum within the state so long as its long-arm jurisdiction does not exceed the maximum limit allowed under the due process clause of the Fourteenth Amendment, a state is also free to adopt procedure limiting its jurisdiction to less than might be allowed under due process standards. The limits of jurisdiction over a nonresident defendant are defined by Civ. R. 4.3. Even though there are no due process problems in the instant

case, it is also necessary to determine whether the Hong Kong corporations fall within the enabling language of Civ. R. 4.3.

Civ. R. 4.3 provides, as pertinent, as follows:

"(A) When service permitted. Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a non-resident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim is the subject of the complaint arose, from the person's: * * *

"(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; * * *."

Contrary to some states, the enabling rule in Ohio for obtaining out-of-state service upon a nonresident defendant does not specifically incorporate the stream of commerce theory. In Ohio, when an injury is caused in this state by a breach of warranty in the sale of goods outside the state, it is necessary to prove that the defendant derives substantial revenue from the goods used in Ohio and that the defendant might reasonably have expected the plaintiff to use the goods in Ohio.

While the "stream of commerce" theory is not specifically incorporated in Civ. R. 4.3(A)(5), it can be used as evidence from which the trier of the fact can infer that the defendants might reasonably have expected plaintiffs to use the goods in the state of Ohio. In other words, evidence showing that a large manufacturer places a sub-

stantial amount of goods in the stream of commerce in the United States is sufficient to allow the trial court to infer that the defendant could reasonably have expected the goods to be used or consumed in Ohio. Civ. R. 4.3 (A)(5) does not require that the defendant directly sell the goods in Ohio.

There is also sufficient evidence to show that the defendants derived substantial revenue from goods sold in Ohio. Appellees pursued discovery energetically in order to obtain information regarding proof of substantial revenue in Ohio. Due to the complexity of the defendants' operation and its insulation from the ultimate retailer, as well as the reluctance or refusal of appellants to conform to Ohio discovery requirements, it was difficult to show the exact dollar amount of goods sold in Ohio. However, substantial is a flexible word allowing latitude in the trial court for determination. The overwhelming evidence of substantial sales of defendants' goods in the United States coupled with proof indicating that a proportionate share of those goods was sold in Ohio is sufficient to satisfy this requirement.

The trial court did not err in holding that the two Hong Kong corporations, Castle Peak and Textile Alliance, are amenable to personal jurisdiction in Ohio in relation to the third-party complaint. Appellants' first assignment of error is overruled. Cross-appellant's second and third assignments of error are overruled as they were submitted conditionally for consideration in the event that the first assignment of error was sustained.

Cross-appellant's first assignment of error is that the trial court ought to have awarded appellees' expenses and attorney fees as a sanction for appellants' failure to respond to discovery as well as attorney fees and expenses for matters proved by appellees that were improperly denied by appellants in response to requests for admission.

Depositions were taken in Hong Kong of representatives of the two Hong Kong corporations. There is no doubt that there was a refusal to answer certain questions in these depositions about matters relevant to the

inquiry at hand and not privileged. Thus, the questions were proper within the scope of discovery as set forth in Civ. R. 26, and there was no justification for appellants' refusal to answer. There did, however, appear to be some misunderstanding of the standards applicable in that Hong Kong attorneys conducted the depositions. In light of apparent misunderstandings and the fact that there was no showing of an intentional violation of the rules, the trial court properly exercised its discretion in refusing to award attorney fees and expenses. A more appropriate sanction under these circumstances is to deem the issue to which the questions were directed admitted—*i. e.*, the amenability of the Hong Kong defendants to personal jurisdiction in Ohio pursuant to Civ. R. 4.3. Appellant's cross-assignment of error number one is sustained to the extent that the jurisdiction in Ohio over appellants is deemed admitted.

The requests for admission or the parts thereof which were denied by appellants primarily related to information within the hands of third parties. There was no showing that appellants failed to make reasonable inquiry before denial or that the materials referred to were readily obtainable by appellants. We find no error in the trial court's failing to grant expenses in regard to the requests for admission.

Appellants' second assignment of error is that the trial court's finding that Melvin Ross did not assume the risk of his conduct in smoking in bed is contrary to the weight of the evidence. Spiegel had demanded that the third-party defendants defend plaintiffs' law suit or suffer the consequences. While the third-party defendants refused to defend, they advised the third-party plaintiff Spiegel that it had a duty to mitigate damages and that if there was a refusal to settle within the $65,000 to $75,000 range, they would not be responsible beyond that amount. The trial court thus found that the third-party defendants were estopped to deny liability.

The third-party defendants could have defended the wrongful death action on the merits while still asserting lack of jurisdiction over their person without waiving that

defense. Civ. R. 14(A) permits a third-party defendant to assert any defense that a third-party plaintiff has to a plaintiff's claim. Instead, appellants chose not to be involved except to the extent of putting some pressure upon Spiegel to settle if a reasonable offer were forthcoming. Thus, appellants are bound by the settlement of the claim if it is reasonable and not collusive just as they would be bound by an adverse determination of liability had the claim been tried against Spiegel without their participation. See *Hessler* v. *Hillwood Mfg. Co.* (C. A. 6, 1962), 302 F. 2d 61. Appellants are not entitled to second guess Spiegel's settlement and are bound by it.

We need not decide whether there was an assumption of the risk of smoking in bed which barred the wrongful death claim as a matter of law. However, that question would appear to present a factual issue of proximate cause since the evidence indicates that the pajamas of Ross were almost incendiary in nature and that Ross may have assumed injuries from a "normal" garment, but not one of this type.

Appellants' second assignment of error is overruled.

Appellants' third assignment of error is that the trial court's ruling that third-party defendants were liable to Spiegel for the breach of an implied contract of indemnity was contrary to the weight of the evidence and contrary to law. Appellants contend that Spiegel did not rely either expressly or impliedly upon any representations of the third-party defendants concerning the flammability of the pajamas and were concerned only whether the pajamas met the specifications required by Spiegel. At the very least, appellants contend that Spiegel was a joint tortfeasor whose negligence was active rather than passive, and whose own negligence barred indemnity.

Appellants do not challenge the trial court's findings that the pajamas worn by Ross were defective and unreasonably dangerous in their flammability properties. However, they want the retailer to bear the entire loss for the product which they put into the market place contending that the retailer should have conducted flammability testing

on the pajamas or required the manufacturer to test the product. However, a retailer in the absence of actual knowledge of a defect in a product has no duty to inspect or test specially for latent defects. *Stephenson* v. *Duriron Co.* (S. D. Ohio 1965), 292 F. Supp. 66, *affirmed* 428 F. 2d 387; *Landon* v. *Lee Motors, Inc.* (1954), 161 Ohio St. 82. This is particularly true where the product is sold in the original package. The pajamas herein were purchased in plastic bags containing three pairs each and were stored and sold in that way after being received from the distributor. Spiegel did nothing to alter or change them. At the very least, there was a factual issue as to whether Spiegel had any obligation to specifically direct the manufacturer to conduct flammability tests or to make tests of their own. That factual issue was resolved against appellants.

Appellants' third assignment of error is overruled.

Appellants' fourth assignment of error is that the trial court failed to give effect to the bar of the statute of limitations. That contention is not well taken. Spiegel's action is based upon an implied contract of indemnity which cause does not accrue until the party seeking indemnification suffers an actual loss. *Stephenson* v. *Duriron Co., supra; Ohio Casualty Ins. Co.* v. *Ford Motor Co.* (C. A. 6, 1974), 502 F. 2d 138. Thus, the statute of limitations did not commence to run until Spiegel settled with Ross.

Appellants' fourth assignment of error is overruled.

Appellants' assignments of error are overruled. Cross-appellant's first assignment of error is overruled in part and sustained in part to the extent that the sanction of deeming jurisdiction on the part of appellants is imposed by virtue of their failure to comply with discovery. Cross-appellant's second and third assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HOLMES and WHITESIDE, JJ., concur.