MELLOTT ET AL., APPELLANTS, *v.* DICO COMPANY, INC. ET AL, APPELLEES.

(No. 1764—Decided February 24, 1982.)

*Mr. Robert N. Gluck,* for appellants.

*Mr. Mark D. Frasure,* for appellee Dico Co.

*Mr. Ronald E. Holtman,* for appellee York Stone and Supply Co.

*Mr. Don L. Reynolds,* for appellee Holmes-Wayne Electric Corp. and Side-O-Matic Co.

BELL, J. The assignment of error placed before us is as follows:

"The trial court erred as a matter of law to the prejudice of the plaintiff-appellant by dismissing the foreign corporation manufacturer, York, as [a] party based upon lack of personal jurisdiction for a failure to demonstrate minimum contact."

George and Susan Mellott, husband and wife, filed the original complaint on January 30, 1980, and named Dico Company, Inc. and Holmes-Wayne Electric Corp., Inc. as defendants in this cause. In an amended complaint, two additional defendants were added: Side-O-Matic Co. and York Stone and Supply Co. (hereafter "York"), appellees herein. Plaintiffs contended, among other things, that on April 19, 1978, George Mellott suffered severe burns and other bodily injuries when an arc of electricity was transmitted down a boom crane manufactured by defendant Dico or defendant Side-O-Matic or defendant York, and through a device designed and used to operate the boom crane. Plaintiffs also stated therein that York had its principal place of business in York, Pennsylvania, but "did business" within the state of Ohio.

On June 4, 1980, York moved that plaintiffs' complaint against it be dismissed pursuant to Civ. R. 12 (B)(2) on the ground that the court lacked jurisdiction over the person of York Stone and Supply Co. Attached to defendant's motion and memorandum in support thereof was the affidavit of Amos Raffensberger, the vice-president/treasurer of York. In that affidavit, dated May 30, 1980, Mr. Raffensberger stated that York is not li-censed to do business in the state of Ohio, maintains no agents in Ohio, and solicits no business in Ohio. Said affidavit also stated that York at one time, but not since 1967, did manufacture boom unloaders exclusively for Side-O-Matic, another Pennsylvania corporation, but did not engage in the retail distribution or sale of these units to any other firm or entity inside or outside the state of Pennsylvania.

In a memorandum supplementing its motion, defendant attached a certification from the Secretary of the state of Ohio that there was no record, as of May 27, 1981, of any incorporation of York Stone and Supply Co., as an Ohio corporation, active or inactive, or as a foreign corporation licensed to do business in this state.

At the motion hearing, plaintiffs produced no evidence to counter that provided by York. However, plaintiffs did maintain strongly at hearing, and in the brief before us, that the "stream of commerce" theory as discussed in *Ross* v. *Spiegel, Inc.* (1977), 53 Ohio App. 2d 297 [7 O.O.3d 385], is applicable to their cause and is supportive of their claim of jurisdiction.

At the conclusion of the hearing the court orally granted York's motion on the basis that plaintiffs had failed to make even a prima facie showing of minimum contacts to justify the court's taking of personal jurisdiction over York. The decision was entered on June 29, 1981; a final judgment "with no just reason for delay" was entered on July 24, and plaintiffs appealed.

Plaintiffs urge that notions of fair play require us to bring within the scope and extent of Ohio's long-arm jurisdiction (as governed by R.C. 2307.382, particularly sections [A][4] and [A][5]), a manufacturer who places products into a stream of commerce which foreseeably may flow into Ohio. Plaintiffs argue that such a manufacturer should not be allowed to escape liability merely because minimum contacts with the state are lacking. In essence, plaintiffs Mellott ask that

we place the stream of commerce theory alongside the doctrine of minimum contacts in our consideration.

The dimension of the theory of "stream of commerce" does not rise to doctrinal standing as does that of "minimal contacts" discussed in *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310. We find the discussion of the development of the minimum contacts doctrine set forth at Annotation, 19 A.L.R. 3d (1968) 13, to be of value and refer to it without further comment here, only for the purpose of brevity. Suffice it to say, the minimum contacts theory was first discussed in *Pennoyer* v. *Neff* (1877), 95 U.S. 714, and became doctrinal law in *International Shoe Co., supra,* which, with variations, still remains the law of the land. This same subject matter is addressed in an annotation regarding the minimum contacts requirement of the Fourteenth Amendment's Due Process Clause. See Annotation, 62 L. Ed. 2d 853. The subject is most recently discussed in *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, which is of particular pertinence here because therein minimum contacts, along with the theory of stream of commerce, is considered.

*World-Wide Volkswagen Corp., supra,* affirms the priority of minimum contacts in due process considerations inherent in the analysis of a forum state's proper taking of personal jurisdiction over a foreign defendant:

The due process clause of the Fourteenth Amendment " 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' " *International Shoe Co., supra,* at 319; *World-Wide Volkswagen Corp., supra,* at 294.

The majority opinion therein at page 295, emphasizes that " '* * * 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." The "foresee-

ability" that is incumbent to due process analysis in determining "stream of commerce" personal jurisdiction questions is *not* the "mere likelihood that a product will find its way into the forum State." Rather, the nature of "foreseeability" in a jurisdictional sense is found in the defendant's conduct and connections with the forum state and his reasonable anticipation therefrom that he may be haled into court there.

Ohio's consideration and application of the "stream of commerce" theory as expressed by Judge McCormac in *Ross* v. *Spiegel, Inc., supra,* appears consistent with the foregoing analysis.

Under *Spiegel,* it appears necessary, since the enabling rule does not specifically include the "stream of commerce" theory, for a plaintiff to produce evidence showing that a large manufacturer or wholesaler placed such a substantial quantity of goods into the "stream of commerce" of plaintiff's state (in *Spiegel,* the United States) that a trial court may properly infer that such manufacturer or wholesaler could reasonably have expected the goods to be used or consumed in Ohio. *Id.* at paragraph two of the syllabus. The *Spiegel* case involved Hong Kong corporations involved in the manufacture and distribution of pajamas, the sale of which, in the United States, accounted for a substantial part of the company's total income.

The Court of Appeals for the Ninth Circuit stated three rules in *L. D. Reeder Contractors of Arizona* v. *Higgins Industries, Inc.* (C.A. 9, 1959), 265 F. 2d 768, 773-774, fn. 12, which we believe are still applicable as guidelines in making our decision in the instant cause, and would seem entirely compatible with the *World-Wide Volkswagen Corp.* opinion. These rules, drawn from a combined reading of *International Shoe Co., supra; McGee* v. *International Life Ins. Co.* (1957), 355 U.S. 220; and *Hanson* v. *Denckla* (1958), 357 U.S. 235, are as follows:

" '(1) The nonresident defendant

must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

" '(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

" '(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens.' "

Applying the law expressed above, we must then measure the validity of the trial court's action in dismissing York as a defendant in this cause. We view with favor the guidelines set forth by Judge Corrigan in *Jurko* v. *Jobs Europe Agency* (1975), 43 Ohio App. 2d 79 [75 O.O.2d 287], paragraphs one and two of the syllabus: does plaintiff set forth sufficient facts in his pleadings alleging a non-resident defendant's minimal contacts with Ohio to withstand a defendant's motion to dismiss pursuant to Civ. R. 12 (B)(2)?

"* * * once challenged plaintiff has the burden of making a prima facie showing of personal jurisdiction and supporting such factual allegations." *Jurko, supra,* at paragraph two of the syllabus.

Plaintiffs' bare assertion that York, a non-resident, manufactured a product which went into the stream of commerce, without more, is insufficient to establish a cause for the granting of *in personam* jurisdiction over York. *Sohn* v. *Bernstein* (Me. 1971), 279 A. 2d 529. A reading of plaintiffs' pleadings reveals that they did not offer evidence of minimal contacts by defendant York that could have contributed to or resulted in a reasonable expectation on defendant's part that its product would be used in Ohio. There is no evidence which evinces a prima facie case to show why jurisdiction should be granted.

In light of the foregoing, we find that the trial court's action of dismissal of defendant York is proper.

The judgment is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and QUILLIN, J., concur.