816 F.2d 249
 Prod.Liab.Rep.(CCH)P 11,356
Thomas E. McPHERSON and Cheryl McPherson, Plaintiffs,
v.
CLEVELAND PUNCH & SHEAR COMPANY, Defendant/Third Party
Plaintiff-Appellee, Cross-Appellant,
Joy Manufacturing Company, Third Party Defendant-Appellant,
Cross-Appellee.
 Nos. 86-3022, 86-3023.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 29, 1987.
Decided April 14, 1987.
 
 Thomas H. Barnard (argued), David J. Somrak, Squire, Sanders & Dempsey, Cleveland, Ohio, for appellant-cross-appellee.
 Orville L. Reed, III, James M. Lyons, Jr. (argued), Buckingham, Doolittle & Burroughs, Akron, Ohio, for appellee, cross-appellant.
 Before KENNEDY, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and SPIEGEL*, District Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Cleveland Punch & Shear Company ("Cleveland Punch") appeals the dismissal of its third-party complaint against Joy Manufacturing Company ("Joy") in this diversity action based on Ohio law. The District Court held that Cleveland Punch was not entitled to contribution from Joy, the employer of the original plaintiff, Thomas McPherson, even if Joy's intentional tortious conduct proximately caused McPherson's injury for which Cleveland Punch was liable. Joy cross-appeals the dismissal of its counterclaim against Cleveland Punch for increases in Joy's workers' compensation insurance premiums resulting from McPherson's injuries. The District Court found the statute of limitations barred this counterclaim. We agree with the District Court's rulings and AFFIRM.
 
 
 2
 On February 12, 1979, McPherson's left hand and wrist were crushed while he was operating a punch press owned by his employer, Joy. The press was manufactured by Cleveland Punch in 1933 and was originally sold to General Motors. The machine had several owners before Joy acquired it and had been modified several times.
 
 
 3
 On October 10, 1980, McPherson and his wife filed suit against Cleveland Punch, alleging that the press was defective in design and/or construction and that Cleveland Punch was negligent in the design and/or manufacture of the press. McPherson was injured when the punch press repeated itself; i.e., it struck twice, instead of once as it was supposed to do. During discovery Cleveland Punch learned that Joy knew that the press tended to do this, but continued to allow employees to operate the press. McPherson denied that he had any knowledge of the press repeating itself before his injury.
 
 
 4
 Cleveland Punch filed a third-party complaint against Joy on June 5, 1985. The complaint alleged that McPherson's injuries were caused by the intentional tortious conduct of Joy, and sought indemnification from Joy. Cleveland Punch later filed an Amended Third Party Complaint asserting an additional cause of action for contribution against Joy, also based on Joy's alleged intentional misconduct. McPherson made no claim against Joy, his employer, for intentional misconduct.
 
 
 5
 On July 26, 1985, Joy asserted a counterclaim, in which it sought to recover from Cleveland Punch the increase in its workers' compensation premiums, which were caused by its having to pay benefits to McPherson.
 
 
 6
 The District Court dismissed Cleveland Punch's third-party complaint on alternative grounds. First, it found that Cleveland Punch's claim was barred by the statute of limitations contained in Ohio Rev.Code Ann. Sec. 2305.10 (Anderson Supp.1985). That section requires a claim for injury to person or personal property to be filed within two years after the date on which the cause of action arose. The District Court found the relevant date to be February 12, 1979, which was the date that McPherson was injured. Neither Cleveland Punch nor McPherson filed a claim of intentional tort against Joy within two years after this date.
 
 
 7
 In applying section 2305.10, the District Court applied the wrong statute of limitations to Cleveland Punch's claim for contribution. Ohio Rev.Code Ann. Sec. 2307.32(C) (Anderson 1981) states the applicable statute of limitations for contribution claims:
 
 
 8
 If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has either discharged by payment the common liability within the statute of limitations period applicable to the claimant's right of action against him and has commenced his action for contribution within one year after payment, or agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.
 
 
 9
 Thus, a cause of action for contribution does not accrue until the joint tortfeasor has paid more than his proportionate share of liability. See National Mutual Ins. Co. v. Whitmer, 70 Ohio St.2d 149, 151, 435 N.E.2d 1121, 1123 (1982) ("[L]iability for contribution is distinct from the liability for the jointly committed tort.... Liability for contribution arises only in favor of a joint tortfeasor and then only when that tortfeasor has paid more than his proportionate share of the common liability."). In addition, an action based on an implied contract of indemnity "does not accrue until the party seeking indemnification suffers an actual loss." Ross v. Spiegel, Inc., 53 Ohio App.2d 297, 307, 373 N.E.2d 1288, 1295 (1977) (citations omitted). Since Cleveland Punch filed its claim against Joy before it settled the McPhersons' suit, the statute of limitations had not run.
 
 
 10
 Alternatively, the District Court concluded that a third party may not bring an action for contribution or indemnification against an employer in intentional tort when the injured employee has not stated such a claim. Before 1982, an injured employee's remedies were thought to be limited to those created by the applicable workers' compensation statutes of the Ohio Revised Code. See Ohio Const. art. II, Sec. 35; Ohio Rev.Code Ann. Secs. 4123.74, 4123.741 (Anderson 1980). In 1982, however, the Ohio Supreme Court held that neither the state constitution nor the workers' compensation statutes prohibited an employee from enforcing his common law remedies against his employer for an intentional tort. Blankenship v. Cincinnati Milacron Chemicals, Inc., 69 Ohio St.2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). The Ohio appellate courts have never addressed the issue of whether a third party can recover from an employer for damages proximately caused by the employer's intentionally tortious conduct, however, although at least one lower court has held in an unpublished decision that the "general rule" is that the employer has immunity from suit by anyone but the employee. See Schwierking v. Sun Petroleum Prod. Co., No. L-83-250 (Lucas County Ct.App., Jan. 20, 1984). Thus, this case presents an issue of first impression for this Court. As this Court has noted:
 
 
 11
 The general rule in diversity cases is that a federal court must apply the law as expressed by the highest court of the state. Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151 (6th Cir.1981); Ruth v. Bituminous Casualty Corp., 427 F.2d 290 (6th Cir.1970). If the highest court of the state has not spoken, however, then the federal court ascertains what the state law is and applies it. See West v. American Telephone and Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Clutter, supra at 1153.
 
 
 12
 Coleman v. Western Elec. Co., 671 F.2d 980, 983 (6th Cir.1982).
 
 
 13
 The District Court rejected Cleveland Punch's argument that third parties can recover from employers in this manner. First, it found that Cleveland Punch's claim for indemnity was meritless, since no claim was made of any written or implied agreement of indemnity between Cleveland Punch and Joy. See Kendall v. U.S. Dismantling Co., 20 Ohio St.3d 61, 485 N.E.2d 1047 (1985).[1] Second, the District Court found that Joy was not liable to Cleveland Punch in contribution because the "Blankenship exception to the general rule of immunity for employers extends only to employees."
 
 
 14
 In Blankenship, several employees alleged that they had been injured by their employer's deliberate failure to warn them of the dangers of the chemicals they were using at the workplace. The Ohio Supreme Court looked first at the relevant statutory provisions. Section 35, article II of the Ohio Constitution provides that the legislature may pass laws establishing a compensation fund for injured employees, and that "any employer who pays the premium or compensation provided by law ... shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease." The legislature enacted the Worker's Compensation Act, Ohio.Rev.Code Ann. Sec. 4123.01 et seq., which states that employers who comply with the Act "shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment...." Ohio Rev.Code Ann. Sec. 4123.74 (Anderson 1980). Fellow employees are granted a similar immunity from suit by Ohio Rev.Code Ann. Sec. 4123.741 (Anderson 1980).
 
 
 15
 The Blankenship court found that "[c]learly, neither the relevant constitutional language nor the pertinent statutory language expressly extend the grant of immunity to actions alleging intentional tortious conduct by employers against their employees." 69 Ohio St.2d at 612, 433 N.E.2d at 575-76. The court stated that "[n]o reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment." 69 Ohio St.2d at 613, 433 N.E.2d at 576 (footnote omitted). Thus, "[s]ince an employer's intentional conduct does not arise out of employment," id., employers have no immunity under section 4123.74 from civil liability for intentional torts. The court found that such a result comported with the purposes of the Act, which was designed to compensate employees for their employer's negligent acts and to promote a safe work environment. The court saw no reason why compensation for pain and suffering and punitive damages should be available to individuals injured by the tortious conduct of others, but not to employees injured by the intentionally tortious conduct of their employers. 69 Ohio St.2d at 614-15, 433 N.E.2d at 577.
 
 
 16
 Although the Blankenship court addressed only the liability of an employer to an employee for its intentional conduct, Cleveland Punch asserts that logically third parties must be allowed to recover as well. It relies primarily on Sydenstricker v. Unipunch Prod., Inc., 169 W.Va. 440, 288 S.E.2d 511 (1982). The West Virginia Supreme Court of Appeals, in Mandolidis v. Elkins Indus., Inc., 161 W.Va. 695, 246 S.E.2d 907 (1978), had held that employees could sue employers for intentional torts despite the existence of a workers' compensation law which limited employees' remedies, in view of an exception in the West Virginia statute that if injury or death resulted from the "deliberate intention" of the employer to cause the injury or death, the employee's recovery was not limited to workers' compensation. In Sydenstricker, the West Virginia Supreme Court of Appeals extended this ruling to permit a third party to obtain contribution from an intentionally tortious employer. The injured employee had brought suit against a manufacturer for negligent design, manufacture, and distribution. The manufacturer filed a third-party complaint against the employer, alleging that the employer had deliberately rendered the product dangerous, and seeking compensation in either implied indemnity and/or contribution. The employer contended that the workers' compensation statute provided it with immunity from such a suit.
 
 
 17
 The Sydenstricker court disagreed, holding that "where the Workmen's Compensation Act provides an express exception from immunity against suits by an employee in a tort area, it follows that a suit grounded on this exception would enable a third party to maintain an action in contribution." 288 S.E.2d at 517. The court found that the employee's decision not to sue his employer for intentional tort was irrelevant: "An employer who may have caused a 'deliberate intent' injury under Mandolidis to his employee should not escape some liability for that injury merely because the injured employee has another theory for recovery of his injuries as against a third party." Id. at 518.
 
 
 18
 Cleveland Punch argues that Blankenship should be read broadly, to deprive employers of immunity from suit by anyone for intentional tortious conduct resulting in injury to an employee. It contends that the reasoning of Ledex, Inc. v. Heatbath Corp., 10 Ohio St.3d 126, 461 N.E.2d 1299 (1984), is helpful. In Ledex, the Ohio Supreme Court held that an employer could sue a third party whose conduct caused injuries to an employee which resulted in higher workers' compensation premiums. Cleveland Punch contends that it would be unfair to allow an employer to sue a third party for increased premiums because of an injury to an employee, but not to allow a third party to sue an employer for the same injury. Yet it is no more unfair whether the employer's conduct is negligent or intentional; in the case of negligent conduct it is settled that the third party may not obtain contribution from the employer. Moreover, Ohio's comparative negligence doctrine reduces any unfairness since the third party would only be liable for its comparative negligence. Ledex, 10 Ohio St.3d at 130, 461 N.E.2d at 1303.
 
 
 19
 We believe that the Ohio courts would limit employers' liability for intentional torts only to suits brought by employees. In Kendall v. U.S. Dismantling Co., 20 Ohio St.3d 61, 485 N.E.2d 1047 (1985), the Ohio Supreme Court had the opportunity to address an employer's immunity from suits arising out of employment. The employee in that case sued both the third party and his employer alleging intentional tortious conduct by the latter. The claim against the employer was dismissed because of the statute of limitations. The third party sought indemnification from the employer. The court found that the constitutional and statutory immunity of the employer were not waived and dismissed the third party's cross-claim. Kendall was decided three years after Blankenship. Paragraph two of the syllabus in Kendall states: "An employer in compliance with the workers' compensation laws of this state does not surrender its statutory and constitutional immunity from suits arising out of employment absent an express and specific waiver of that immunity."
 
 
 20
 Blankenship appears to be based on a special concern for employees. We do not believe the Ohio courts would extend that concern to third parties, especially in view of the public policy of Ohio expressed by the Ohio legislature following Blankenship.
 
 
 21
 By the Act of August 22, 1986, 1986 Ohio Legis. Bulletin 269, 273 (Anderson) (to be codified at Ohio Rev.Code Ann. Sec. 4121.80), Ohio created an Intentional Tort Fund to compensate employees injured by the intentional tortious conduct of their employers. See section 4121.80(E).
 
 
 22
 Section 4121.80 speaks only in terms of suits by employees against their employers, and is applicable to any actions "based upon a claim that an employer committed an intentional tort against an employee pending in any court on the effective date of this section." Section 4121.80(H). Although it does not address the factual pattern present here, the statute does contain strong expressions of legislative purpose. The section reiterates that the immunity created in section 35, article II of the Ohio Constitution and Ohio Rev.Code Ann. Secs. 4123.74 and 4123.741 is "an essential aspect of Ohio's workers' compensation system," and that "the intent of the legislature in providing immunity from common law suit is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided." Section 4121.80(B).
 
 
 23
 Finally, requiring Joy to contribute to the settlement Cleveland Punch reached with McPherson would compel it to contribute for a non-intentional injury, i.e., for Cleveland Punch's ordinary negligence. Although we cannot be certain what the Ohio Supreme Court will do, our best judgment is that it will not extend the employer's liability.
 
 
 24
 On cross-appeal, Joy argues that the District Court erred in holding that Joy's counterclaim for increased workers' compensation premiums and other losses incurred as a result of McPherson's injuries was barred by the statute of limitations. Although recognizing that Ledex, Inc. v. Heatbath Corp., 10 Ohio St.3d 126, 461 N.E.2d 1299 (1984), would allow Joy to recover such increases from Cleveland Punch, the District Court found that Joy's claims were barred by Ohio Rev.Code Ann. Sec. 2305.09(D) (Anderson 1981), which provides that an action must be brought within four years after the cause of action accrued. (Both parties agree that section 2305.09(D) is the appropriate section.) The District Court held that the cause of action accrues on the date upon which the employer's legal liability is incurred, which it found here to be the date on which the employee was injured. Thus, in the District Court's view, the statute began to run on February 12, 1979, and ran until February 12, 1983. Cleveland Punch's third-party complaint was filed on June 5, 1985. Joy's counterclaim was filed on July 26, 1985.[2]
 
 
 25
 The Ohio appellate courts have not yet determined when a cause of action accrues for an increase in workers' compensation premiums. Normally, "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." Velotta v. Leo Petronzio Landscaping, Inc., 69 Ohio St.2d 376, 379, 433 N.E.2d 147, 150 (1982) (citation omitted). See also Children's Hospital v. Ohio Dept. of Pub. Welfare, 69 Ohio St.2d 523, 526, 433 N.E.2d 187, 190 (1982).
 
 
 26
 Joy contends that its cause of action against Cleveland Punch accrued on the date on which its workers' compensation premiums were actually raised, not the date on which its employee was injured. It notes that an injured employee may decide not to file a claim, or his or her claim may be disallowed. Even if a claim is paid, it may not result in increased costs for the employer. Thus, Joy argues, an employer has no way of knowing at the time the employee is injured whether that injury will result in higher premiums and therefore whether the company has suffered an injury.
 
 
 27
 Cleveland Punch argues that this situation is analogous to that of a plaintiff injured in an automobile accident; the plaintiff's cause of action accrues on the date of injury, not on the date on which he receives a statement for the entirety of his medical expenses.
 
 
 28
 Employers in Ohio must either carry insurance with the Ohio State Insurance Fund or be self-insured. Insurance premiums are based in part on an employer's claims experience. The basic rate is modified by actual losses and expected losses. Ohio Indus. Comm'n Reg. Sec. 4121-7-03 (1986). Thus, although it may be difficult to determine the amount of premium increase resulting from a particular injury, the employer would know that premiums are subject to increase when a serious injury is incurred. Cleveland Punch argues that an injured employee may not file a claim. Although theoretically possible, it is improbable that any employee whose injuries are serious enough to affect future insurance premiums will not file a claim. Both this argument and the argument that the claim may not be allowed are reasons for postponing the date that the cause of action accrues to the date when the claim is allowed or benefits paid, rather than adopting the date when the premium is actually paid or when the full increase in premiums has been established. In the case of a self-insured employer, it seems clear that such an employer is damaged when the first medical, or other, benefit is paid. The amount of damage in the case of insurance premiums is no more difficult to measure than future medical expenses and future loss of earnings in some personal injury actions.
 
 
 29
 The same reasons exist for a relatively short statute of limitations here as in an action for personal injuries. The Ohio Supreme Court has explained the legislative concern in Andrianos v. Community Traction Co., 155 Ohio St. 47, 51-52, 97 N.E.2d 549, 552 (1951) (citations omitted):
 
 
 30
 Furthermore, it may be assumed that the General Assembly was motivated by a cogent reason in limiting to two years the bringing of an action for bodily injury. This is not an unreasonably short time and in actions of this character the evidence, being usually wholly oral, is liable to be lost by the death or absence of witnesses, failure of memory and other causes.
 
 
 31
 The underlying liability here depends upon a personal injury. To enlarge the four years permitted by section 2305.09(D) by holding that the cause of action does not accrue until the damages are fully fixed and certain would be contrary to this policy behind the statute of limitations.
 
 
 32
 In the two cases addressing the accrual dates of Ledex claims, the Ohio trial courts have held that the cause of action accrued on the date of the employee's injury. See A.C. Eynon Co. v. Beaver Excavating Co., No. 84-1140 (Stark County Ct. C.P.1985); Sharon Ornamental Iron, Inc. v. Esch Construction Co., No. 43639 (Medina County Ct.C.P.1985) (dicta). We believe the Ohio Supreme Court will adopt the same date or, alternatively, the date the employee's claim is allowed or paid. Under either of these dates, Joy's claim was barred.
 
 
 33
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Cleveland Punch does not appeal the denial of its indemnity claim
 
 
 [2]
 The District Court held that the filing of the third-party complaint did not toll the statute of limitations because it did not state a cause of action. However, failure to state a claim on which relief can be granted goes to the merit of the claim, not the jurisdiction of the court. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Since the court had jurisdiction over the counterclaim, it could serve to toll the statute of limitations. We do not decide whether the filing of the third-party complaint tolled the Ledex claim, since we find Joy's claim barred for other reasons