The DEACONESS HOSPITAL OF CINCINNATI, OHIO Plaintiff,

v.

AMERICAN LIFE INSURANCE COMPANY, and Gardner & White, Inc., Defendants.

No. C–1–89–412.

United States District Court, S.D. Ohio.

May 4, 1990.

Stuart Dornette, Cincinnati Ohio, for plaintiff.

William Hardy, David Poast, Cincinnati Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on a motion for summary judgment (Doc. No. 26) filed by defendant Gardner & White, Inc. ("GW") and an opposing memorandum (Doc. No. 31) submitted by plaintiff The Deaconess Hospital of Cincinnati, Ohio ("Deaconess"). GW moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## OPINION

On June 7, 1989, Deaconess, a non-profit hospital, filed suit against both GW, a specialist in employee benefit pension plan consultation, brokerage and administration, and American United Life Insurance Company ("AUL"), an insurance company which designs and administers pension plans and manages pension funds. Deaconess alleges that GW negligently designed and promoted an employee pension plan ("Plan") for Deaconess in 1973 and in 1976. Deaconess also alleges that GW negligently administered Deaconess's Plan after an amendment was made in 1981. The complaint contains allegations against AUL as well for its participation in the design and the administration of Deaconess's Plan from 1973 through March, 1989.

The crux of plaintiff's charges against GW is GW's alleged failure to advise Deaconess to include a benefit accrual formula ("accrual formula") in its Plan from 1973 through 1981.[1] In 1981, GW recommended and Deaconess adopted an amendment which contained an accrual formula. Deaconess alleges that GW failed to administer the amended Plan as written in the years following 1981 until March, 1990.

### Summary Judgment

GW urges the Court to grant summary judgment based on two separate grounds. First, GW contends that any cause of action or claim of negligence occurring prior to June 7, 1985 is barred by the applicable statute of limitations. Second, GW argues that all claims brought by Deaconess against GW are barred by the doctrine of laches.

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The function of the Court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592–1593). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service*, 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### Statute of Limitations

The parties agree that Deaconess's claims of negligence against GW are grounded in Ohio law and that the applicable statute of limitations is Ohio Rev.Code § 2305.09(D). R.C. 2305.09(D), the general

---

**1.** An accrual formula incorporated into a defined benefit pension plan such as the Deaconess Plan provides that the normal retirement benefit is earned proportionally over the number of years between the participant's date of hire and his normal retirement age. Complaint ¶ 10.

tort statute of limitations, provides that an action must be brought within four years of the date the cause of action accrues. *Holsman Neon & Elec. Sign Co. v. Kohn,* 34 Ohio App.3d 53, 516 N.E.2d 1284, 1286 (1986). GW asserts that a cause of action accrues when the negligence complained of occurs and that the negligent acts allegedly committed by GW in 1973, 1976, 1981 and each year thereafter until June 7, 1985 occurred and accrued when contributions were made, benefits were calculated and annuities were purchased, and consequently such claims are barred. GW assumes that each of Deaconess's claims constitute separate causes of action which accrued separately upon the payment by Deaconess of a premium. Therefore, GW argues that the statute of limitations was triggered anew with each accrual event and Deaconess cannot advance any claims of negligence occurring four years before the filing of this lawsuit or prior to June 7, 1985.

The Court of Appeals for the Sixth Circuit recently addressed the issue of when a negligence claim accrues under Ohio law, stating:

> It has been recognized in Ohio law, for instance, that a cause of action generally accrues when the wrongful act is committed. [citations omitted.] ("A cause of action for negligence accrues when the negligent act is committed.") However, when an injury does not result immediately, the cause of action does not accrue until actual injury or damage ensues. [citations omitted.] Therefore, in determining *when* an action accrues, the Ohio courts focus on when the wrongful act is committed, unless the act does not give rise to injury immediately.

*Vaughn v. J.C. Penney Co., Inc.,* 822 F.2d 605, 609–10 (6th Cir.1987). A cause of action does not accrue until actual damage or injury occurs, thereby completing the tort. *See McPherson v. Cleveland Punch & Shear Co.,* 816 F.2d 249, 254 (6th Cir.1987) *citing Children's Hospital v. Ohio Department of Public Welfare,* 69 Ohio St.2d 523, 433 N.E.2d 187, 190 (1982); *see also Kunz v. Buckeye Union Ins. Co.,* 1 Ohio St.3d 79, 437 N.E.2d 1194, 1196–97 (1982); *Sladky v. Lomax,* 43 Ohio App.3d 4, 538

N.E.2d 1089, 1091 (1988). More difficult to apply than articulate, this rule of law requires a court to determine when actual injury to the plaintiff occurred.

The Ohio courts give some guidance but no clear directives that can be easily adapted to the facts of this case. In *Kunz,* supra, the Supreme Court of Ohio concluded that plaintiffs' negligence claim against an insurer for failing to obtain proper insurance coverage for their equipment accrued when the equipment sustained a loss and not when the policy was issued or renewed. A different rule would require an insured to consult legal counsel whenever he consolidated or renewed an insurance, an onerous and impractical burden. *Id.* 437 N.E.2d at 1197. Similarly, taxpayers' claims against their accountants for negligent preparation of their income tax returns accrued when the plaintiffs were notified of an assessment against them by the Internal Revenue Service and not when the negligent advice was given. *Sladky,* 538 N.E.2d at 1091. So too, a hospital's suit against the Ohio Department of Public Welfare for wrongful withholding of payments was timely brought since its claim accrued when the money was actually withheld and not when the deductions were calculated and entered on the books of the department. *Children's Hospital,* 433 N.E.2d at 190; *see also Investors REIT One v. Jacobs,* 46 Ohio St.3d 176, 546 N.E.2d 206, 211 (1989) (Interpreting R.C. 2305.09(D): "[the defendant] served as accountants for [the trusts] through at least part of 1975. The accountants prepared annual audits for the years 1969 through 1974 ... the trusts' causes of action commenced no later than 1975.")

It is clear from the allegations in the complaint that Deaconess charges GW with continuous and ongoing negligence in its function as pension plan advisor for the hospital from 1973 through 1989. However, the Ohio Court of Appeals has rejected the application of the continuing injury doctrine to negligence claims brought against professionals such as accountants under R.C. 2305.09(D). *Lee Turzillo Contracting Co. v. Touche Ross & Co.,* Slip Op.

Nos. 51075, 51114 (Ohio App. October 9, 1986). Moreover, the Court of Appeals for the Sixth Circuit has noted the distinction between claims for asbestos injuries in which the continuing injury doctrine controls and claims against a corporation's officers for concealed negligence in which the doctrine does not apply. *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151, 1156 (6th Cir.1981). The authority before this Court instructs that Deaconess's allegations should not be treated as a single claim for a continuing tortious act but rather as separate causes of action accruing each time the hospital was damaged by the allegedly negligent advice.

■ While the lack of an accrual formula impacted the size of Deaconess's annual contributions to the pension funds from 1973 through 1989, the actual damage to the hospital arising from the negligence complained of occurred each time the hospital purchased an annuity for a retired employee which provided a higher benefit than the employee otherwise would have collected had an accrual formula been included and operative during his years of employment at the hospital. The statute of limitations was triggered anew upon each such accrual event. Claims brought by Deaconess for its purchase of annuities prior to June 7, 1985 for plan participants who left the hospital before the normal retirement date are time-barred. Accordingly, GW's motion for summary judgment is granted in part.

### The Doctrine of Laches

■ GW advances a second argument to support its motion for summary judgment: Deaconess is estopped from pursuing its claims based on the doctrine of laches. The doctrine of laches operates as a bar to claims brought by a plaintiff who had prior knowledge of the act complained of, lacked diligence in asserting his legal remedies and thereby prejudiced the defendant. *See Association of Data Processing Service Organizations, Inc. v. Federal Home Loan Bank of Cincinnati*, 421 F.Supp. 384, 389 (S.D.Ohio 1976), *aff'd*, 568 F.2d 478 (6th Cir.1977).

GW asserts that in 1975, 1979, and 1984, GW made recommendations to Deaconess to include a "years of service factor in the Deaconess pension plan benefit formula." GW Memo at 15. GW contends that this "years of service factor" allegedly proposed by GW on three separate occasions is the same as an accrual formula cited in the complaint. GW argues that Deaconess unexcusably delayed in filing this suit since it was on notice as early as 1975 that a "years of service factor" could and should be incorporated into its Plan. Further, GW contends that Deaconess inexcusably delayed in adopting the "very provisions" rejected in 1975, 1979 and 1984 which plaintiff "now claim[s] were proper and should have been adopted in 1973." GW Memo at 16.

Deaconess counters that defendant's laches defense is premised on significant contested issues of fact. Prior to reaching the merits of the laches defense, the Court must examine whether the factual predicate underlying the defense consists of material facts which are disputed by the parties, making disposition by summary judgment inappropriate. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. First, Deaconess contests GW's claim that the 1975 proposal for a 15 or 20 "years of service factor" would operate as the accrual formula typically found in a defined benefit pension plan. Citing correspondence in October and December, 1975 between GW and Deaconess, the plaintiff raises sufficient doubt about whether the 1975 proposal can reasonably be construed to be an accrual formula as defined in the complaint.

Second, Deaconess questions the authenticity of documents relied upon by GW to substantiate the existence of recommendations for a "years of service factor" allegedly made by GW in 1979 and 1984. The documents were produced belatedly; Deaconess has no copies of the letters in its files and the administrator of the hospital, to whom the letters were purportedly sent, does not believe he ever received this correspondence; and, finally, scientific analysis of the paper used raises uncertainty about

**158**

the dates when the letters were actually written.

Deaconess points to evidence in the record which rebuts GW's contention that the hospital was on notice or advised of an accrual formula in 1975, 1979 or 1984. GW has not established that the hospital had prior knowledge that its Plan should contain an accrual formula nor does GW demonstrate conclusively that Deaconess slept on its legal rights. Genuine issues of material fact underlie the laches defense and preclude a determination of the applicability of the doctrine in this case. Moreover, issues of credibility, already disputed by the parties, require the evaluation of a trier of fact. Summary judgment on this basis is not warranted.

### CONCLUSION

In sum, Deaconess's claims brought for annuities purchased prior to June 7, 1985 for plan participants who left the hospital before their normal retirement date are barred under R.C. 2305.09(D). The doctrine of laches does not exclude any of Deaconess's remaining claims. Accordingly, GW's motion for summary judgment is hereby GRANTED in part and DENIED in part.

IT IS SO ORDERED.